UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **DAVID OPPENHEIMER,** | § § | |
| Plaintiff, | § § § | CA No. 1:18-cv-00272-MR |
| v. | § § § | |
| **JAMES SEAN GRIFFIN and JENNIFER FOWLKES GRIFFIN** | § § § § | |
| Defendants. | § § | **JURY DEMANDED** |

**PLAINTIFF'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT**

Pursuant to Rule 55(b) and 58(d) of the Federal Rules of Civil Procedure, Plaintiff, David Oppenheimer ("Oppenheimer" or "Plaintiff"), by and through his undersigned counsel, respectfully moves the Court for an entry of default judgment in favor of Oppenheimer and against Defendants, JAMES SEAN GRIFFIN and JENNIFER FOWLKES GRIFFIN ("Defendants"). Default has been entered against Defendants by the Clerk of Court for failure to answer or otherwise defend the instant suit on September 5, 2019 [ECF No. 15]. Oppenheimer requests that the Court award all relief requested herein against Defendants, and in support states as follows:

**I.  Summary and Introduction**

Oppenheimer initiated this action against Defendants for willful copyright infringement and violations of the Digital Millennium Copyright Act ("DMCA"). Defendants are in default and the requirements for a default judgment have been met. Based upon the declarations of Oppenheimer and the undersigned counsel, Dana A. LeJune, Oppenheimer seeks entry of default judgment for his claims of copyright infringement against Defendants, an award of damages

pursuant to 17 U.S.C. § 504, an award of damages pursuant to 17 U.S.C. § 1203, an award of costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505, prejudgment interest, and an injunction pursuant to 17 U.S.C. § 502 permanently enjoining Defendants from further infringement.

## II. Statement of Facts

### a. Oppenheimer's Rights to the Work

Oppenheimer is a professional photographer, and is the author (photographer) of, and at all times relevant to this claim, has been and is now the sole owner and proprietor of all right, title and interest in and to the copyrights in the photograph at issue in this matter (the "Work," ECF No. 1-2; Oppenheimer Decl. ¶ 5). On March 11, 2013, Oppenheimer obtained a registration with the United States Copyright Office for the Work. (ECF No. 1-3; Oppenheimer Decl. ¶ 5).

### b. Willful Copyright Infringement by Defendants

Defendants are individual citizens of Florida, who own, operate, and lease property in the Elk Banner Mountain area of northwestern North Carolina. (ECF No. 1 at ¶ 11 and ECF No. 1-4 through ECF No. 1-7; Oppenheimer Decl. ¶ 6). Defendants advertise and market their property on multiple websites, including but not limited to booking.com, expedia.com, Travelocity.com, vrbo.com, and ebookers.ie. ECF No. 1 at ¶ 11 and ECF No. 1-4 through ECF No. 1-7; Oppenheimer Decl. ¶ 6). Oppenheimer has never licensed the use of his Work to Defendants for any purpose. (ECF No. 1 at ¶¶ 11-14; and Oppenheimer Decl. ¶ 10).

On or about August 3, 2017, Oppenheimer first discovered that Defendants had infringed his copyrights beginning sometime around July 5, 2017 by copying, uploading and publishing (or directing others to do so) his protected Work. (ECF No. 1 at ¶ 11 and ECF No. 1-4 through ECF No. 1-7; Oppenheimer Decl. ¶ 6). After Defendants copied the Work, they made further copies and distributed the Work by publishing it on the Internet on the following URLs:

a. https://www.booking.com/hotel/us/siso-5350.html?aid=356980
b. https://www.vrbo.com/4609127ha
c. https://www.rentbyowner.com/property/siso-5350/BC-2478678
d. https://www.expedia.com/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
e. https://www.travelocity.com/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
f. https://www.ebookers.ie/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
g. https://aff.bstatic.com/images/hotel/max500/105/105127550.jpg
h. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c10.jpg
i. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c8.jpg
j. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c6.jpg
k. https://www.j2ski.com/ski_hotels/USA/Banner_Elk/Siso_5350.html

(ECF No. 1 at ¶ 11 and ECF No. 1-4 through ECF No. 1-7; Oppenheimer Decl. ¶ 6)

Defendants used Oppenheimer's protected Work for the advertising, marketing, selling or leasing of their property in the Elk Banner Beech Mountain area. (ECF No. 1 at ¶ 11 and ECF No. 1-4 through ECF No. 1-7; Oppenheimer Decl. ¶ 6).

For many years, it has been Oppenheimer's custom and business practice to display his copyright management information ("CMI") on his copyrighted photographs when they are first published. (ECF No. 1 at ¶ 10; Oppenheimer Decal ¶ 7). Oppenheimer's Work at issue in this case, as first published, prominently displays his CMI in the caption and with a watermark, as well as embedded in the metadata of the Work; thus, Defendants were on notice that the Work was copyright protected. (ECF No. 1 at ¶ 10; Oppenheimer Decl ¶ 7). Therefore, Defendants saw Oppenheimer CMI on the face of the Work prior to copying it, and distributing it on the Internet. Because they had the opportunity to appreciate that Oppenheimer was the sole author and owner of the Work, and still used it without license or authorization, Defendants' infringement was willful.

Defendants have not compensated Oppenheimer for their otherwise infringing use of the Work. (Oppenheimer Decl. ¶ 18). As such, Defendants' refusal to pay for its commercial use of the Work evdiences that Defendants infringement was willful and intentional throughout and they always intended to profit from Oppenheimer's Work without paying any fees for their use.

Additionally, even after Oppenheimer placed Defendants on notice of their infringement, Defendants continued[1] to infringe Oppenheimer's Work through public display on the following URLs:

- a. https://www.expedia.com/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
- b. https://www.travelocity.com/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
- c. https://www.ebookers.ie/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
- d. https://aff.bstatic.com/images/hotel/max500/105/105127550.jpg
- e. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c10.jpg
- f. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c8.jpg
- g. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c6.jpg
- h. https://www.j2ski.com/ski_hotels/USA/Banner_Elk/Siso_5350.html
- i. https://www.booking.com/hotel/us/siso-5350.html?aid=356980
- j. https://s-ec.bstatic.com/images/hotel/270x200/105/105127550.jpg

(ECF No. 1 at ¶ 13; Oppenheimer Decl. ¶ 8).

### c. Violations of DMCA by Defendants

Oppenheimer clearly marked the Work both on the face of the image with full notices of copyright, and in the metadata with full notice of copyright, all rights reserved, and insturctions. (ECF No. 1 at ¶ 19; ECF No. 1-2; Oppenheimer Decl. ¶ 7). Oppenheimer did this to ensure that

---

[1] Indeed infringing copies of the Work are still online to this day, such as https://s-ec.bstatic.com/images/hotel/270x200/105/105127550.jpg.

anyone who views the Work understands that Oppenheimer owns all rights and title. (ECF No. 1 at ¶ 19; ECF No. 1-2; Oppenheimer Decl. ¶ 7). Defendants intentionally removed and/or omitted Oppenheimer's CMI both from the face of the image and from the metadata. (ECF No. 1 at ¶ 19; ECF No. 1-4 through 1-7; Oppenheimer Decl. ¶ 16) Defendants also distributed copies or derivatives of such work knowing that such CMI had been removed and/or omitted without authorization. (ECF No. 1 at ¶ 21; ECF No. 1-4 through 1-7; Oppenheimer Decl. ¶ 7). At the time they removed and/or omitted Oppenheimer's CMI, Defendants knew or had reasonable grounds to know that such behavior would induce, enable, facilitate, and/or conceal the infringement of Oppenheimer's copyrights. (ECF No. 1 at ¶ 22; ECF No. 1-4 through 1-7; Oppenheimer Decl. ¶ 16). Oppenheimer has been harmed by the removal and/or omission of his CMI, and by the distribution of his Work without his CMI. (ECF No. 1 at ¶ 25; Oppenheimer Decl. ¶ 16).

### d. Procedural History

On December 12, 2017 and August 18, 2018 Oppenheimer, through the undersigned counsel, sent "Cease and desist" letters *via* email to Defendants which requested information about the unauthorized publication, and asked them to protect potentially relevant electronically-stored information. (ECF No. 1 at ¶ 13; ECF No. 1-8 through 1-10; LeJune Decl. ¶ 3). Despite Oppenheimer's persistent and best efforts, Defendants failed to provide the requested information, or even respond to Oppenheimer's notices despite receiving and opening multiple emails sent to them by Oppenheimer's Counsel. (ECF No. 1 at ¶ 13; ECF No. 9-7 through 9-8; ECF No. 14-2 through 14-4; LeJune Decl. ¶ 4).

On September 24, 2018, Oppenheimer filed his Complaint against Defendants. (ECF No. 1). On September 25, 2018, Counsel for Oppenheimer sent to both named Defendants, *via* certified mail, return receipt requested, a Notice of Lawsuit and Request to Waive Service of a Summons,

together with copies of the Waiver of Service of Summons, the Complaint, and all Exhibits filed with this Court.[2] (ECF No. 7-1 through 7-3; LeJune Decl. ¶ 5). These items were sent to the home and business addresses located by Plaintiff's counsel. Id. Oppenheimer allowed sufficient time for mailing from Houston to Florida and continually checked on the status of the certified mail items. Id. Counsel for Oppenheimer took additional efforts to locate additional or alternative addresses for the Defendants without success. Id. After it was apparent that Defendants were not going to accept the certified mail items, Plaintiff hired a private investigator to attempt to locate the Defendants and serve Summons, Complaint and other necessary documents on them. **Id**. The private investigator located Defendants' business and residential address, which were both located on a 93-acre tract of fenced land ("The Compound"). (ECF No. 9; ECF No. 9-3 through 9-5; LeJune Decl. ¶ 8-9). Despite Oppenheimer's multiple good-faith attempts[3] to serve Defendants with notice of citation, Defendants continued to evade such service. (ECF No. 9; ECF No. 9-1 through 9-8; LeJune Decl. ¶ 10).

Finally, on June 13, 2019, Defendants were each served with the Summons and a copy of the Complaint with all exhibits, by depositing with Federal Express via two-day delivery to James Sean Griffin, 15212 State Road 52, Land O'Lakes, Florida 34638 and Jennifer Fowlkes Griffin, 15212 State Road 52, Land O'Lakes, Florida 34638, and obtaining a "delivery receipt," pursuant to Fed. R. Civ. P. 4(e)(1) and N.C.R. Civ. P. 4(j)(1). (ECF No. 11; ECF No. 12; ECF No. 14-4). Additionally, the evidence showed that Defendants opened all emails sent by LeJune to them, to which all the suit papers were attached (ECF No. 14-1 through 14-4).

---

[2] The September 25, 2018 mailing was sent to Jennifer Fowlkes Griffin by Certified Mail, Return Receipt Requested Item 70180040000062101222. An identical mailing was sent to James Sean Griffin by Certified Mail, Return Receipt Requested Item 70180040000062101246 also on September 25, 2018.

[3] By the undersigned counsel, multiple process servers, and private investigator.

Defendants have not filed a plea in response to Oppenheimer's Complaint, nor have they taken any action that otherwise indicates their intent to defend the suit. On September 5, 2019, the Clerk entered default against Defendants. (ECF No. 15).

### III. Legal Standard for Default Judgment

Once a default is entered by the Clerk of Court, a plaintiff may seek entry of a Default Judgment by the Court against the defaulting defendant pursuant to Federal Rule of Civil Procedure 55.[4] "A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F. 3d 1298 1307 (11th Cir. 2009) (quoting *Nishimatsu Const. Co., Ltd. V. Houston Nat'l Bank*, 515 F. 2d 1200, 1206(5th Cir. 1975)); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

Following the entry of a default judgment, damages may be awarded "without a hearing [if] the amount claimed is a liquidated sum or one capable of mathematical calculation." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543-44 (11th Cir. 1985). "Damages may be awarded only if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *Id.* at 1544.

---

[4] Fed. R. Civ. P. 55 (b)(2): In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the true of any allegation by evidence; or (D) investigate any other matter.

Oppenheimer received an entry of default pursuant to Rule 55(a) on September 5, 2019. (ECF No. 15). Now, Oppenheimer seeks a final default judgment under Rule 55(b).

**IV. Argument**

a. **Oppenheimer has Established Defendants' Liability for Copyright Infringement**

The Copyright Act states that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as proved in section 106A(a) …. Is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). Liability for copyright infringement occurs when a plaintiff can prove (1) plaintiff's ownership of a copyright, and (2) defendant's copying of the Work. See *Feist Publications, Inc. v. Rural Tel. Serv. Co*, 499 U.S. 340 (1991).

**i. Oppenheimer Owns a Valid Copyright for the Work**

Oppenheimer's Work is an original and expressive pictorial work that may be copyrighted pursuant to 17 U.S.C. § 102(a)(5). A plaintiff may satisfy the first prong by producing a certificate of registration, then the burden shifts to the defendant to demonstrate why the claim of copyright is invalid. *See Feist Publications*, 499 U.S. 340 (noting a "certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate").

Oppenheimer registered the Work pursuant to 17 U.S.C. § 411(a) and was given a Certificate of Registration, Registration Number VAu 1-132-213, as of March 11, 2013. (ECF No. 1-3). The copyright of the work was registered within five years of first publication of the Work therefore Oppenheimer is entitled to the presumption of validity of the copyright for the Work and all facts stated in the copyright certificate under 17 U.S.C. § 401(c).

### ii. Defendants Copied the Work

Oppenheimer must also establish that Defendants engaged in unauthorized copying of the Copyrighted Work. *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002). A plaintiff in a copyright infringement suit can prove copying either directly or indirectly. *See Lyons P'ship, L.P. v. Morris Costums, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001).

Here, the is no question that Defendants directly copied Oppenheimer's Work and published the same on the Web without license or authorization. Oppenheimer has produced documents showing Defendants' copying [ECF No. 1-4 through ECF No. 1-7], and Defendants have been found in default by the Clerk of the Court. (ECF No. 15). The produced documents show that Defendants copied Oppenheimer's Work in at least the manner shown in Exhibits C through F from the Complaint when they posted the Work in order to market and promote their property in the Elk Banner Beech Mountain area. (ECF No. 1-4 through ECF No. 1-7). There is no factual or subjective issue of "substantial similarity" here, because the Work in question is a whole photograph and the copy made by Defendants was an exact copy of the entire image, with the sole exception of Oppenheimer's CMI, which was cropped from the Work. ECF No. 1-4 through 1-7; Oppenheimer Decl. ¶ 6).

Thus, Defendants undisputedly copied Oppenheimer's Work and a Final Default Judgment should be entered against them.

### b. Oppenheimer Established that Defendants' Infringement was Willful

Copyright infringement is willful if the defendant "recklessly disregards a copyright holder's rights." *Lyons P'ship, L.P. v. Morris Costumes, Inc*., 243 F.3d 789, 799 (4th Cir. 2001). Moreover, courts may infer that a defendant willfully infringed a copyright because of the defendant's default. See *Arista Records, Inc. v. Beker Enterprises, Inc*., 298 F.Supp.2d 1310, 1313

(S.D. Fla. 2003); see also *Davis v. Gap, Inc*., 246 F.3d 152, 155 (2d Cir. N.Y. 2001) (finding defendant's own default as evidence of willfulness and holding that the "purpose of punitive damages—to punish and prevent malicious conduct—is generally achieved under the Copyright Act through the provisions of 17 U.S.C.S. § 504(c)(2), which allow increases to an award of statutory damages in cases of willful infringement.").

Here, Defendants reproduction, distribution, and public display of Oppenheimer's protected Work without obtaining – or even seeking – permission from Oppenheimer as copyright owner demonstrates that Defendants had knowledge, or at least acted with reckless disregard, of the fact that their conduct infringed Oppenheimer's exclusive rights.

Additionally, as stated, Oppenheimer's Work, as first published, prominently displays his CMI in the caption and with a watermark, as well as embedded in the metadata of the Work; thus, Defendants were on notice that the Work was copyright protected. (ECF No. 1 at ¶ 10; Oppenheimer Decl ¶ 7). Therefore, Defendants saw Oppenheimer CMI on the face of the Work prior to copying it, and distributing it on the Internet. Because they had the opportunity to appreciate that Oppenheimer was the sole author and owner of the Work, and still used it without license or authorization, Defendants' infringement was willful.

Defendants have not compensated Oppenheimer for their otherwise infringing use of the Work. (Oppenheimer Decl. ¶ 18). As such, Defendants' refusal to pay for its commercial use of the Work evidences that Defendants infringement was willful and intentional throughout and they always intended to profit from Oppenheimer's Work without paying any fees for their use.

Additionally, even after Oppenheimer placed Defendants on notice of their infringement, Defendants continued to infringe Oppenheimer's Work through public display on the following URLs:

a. https://www.expedia.com/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
b. https://www.travelocity.com/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
c. https://www.ebookers.ie/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
d. https://aff.bstatic.com/images/hotel/max500/105/105127550.jpg
e. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c10.jpg
f. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c8.jpg
g. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c6.jpg
h. https://www.j2ski.com/ski_hotels/USA/Banner_Elk/Siso_5350.html
i. https://www.booking.com/hotel/us/siso-5350.html?aid=356980
j. https://s-ec.bstatic.com/images/hotel/270x200/105/105127550.jpg

(ECF No. 1 at ¶ 13; Oppenheimer Decl. ¶ 8).

Accordingly, the well-pleaded facts of the Complaint, which are admitted by Defendants' default, establish that Defendants' infringement of Oppenheimer's Work was willful and deliberate – or, at the very least woefully reckless.

### c. Detailed Declarations Establish the Amount of Damages and Other Relief Requested

In addition to the entry of default judgment against Defendants, Oppenheimer requests the following relief and any other relief as the court deems just and proper.

#### i. Actually Damages are Insufficient for Willful Copyright Infringement

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."

Generally, the term "actual damages" is "broadly construed to favor victims of infringement." *Dash v. Mayweather*, 731 F.3d 303 (4th Cir. 2013), *quoting On Davis v. The Gap, Inc*. 246 F.3d 152, 164 (2d Cir. 2001). Actual damages are often measured in the fair

market value of the licensing "fee the owner was entitled to charge for [the infringer's] use" of the copyrighted work. *Id*. "If a copier of a protected work, instead of obtaining permission and paying the fee, proceeds without permission and without compensating the owner,. . . the owner has suffered damages to the extent of the infringer's taking without paying what the owner was legally entitled to exact a fee for." *Id*. To demonstrate entitlement to a reasonable license fee, the fair market value of an infringed work may be established by "evidence of benchmark licenses, that is, what licensors have paid for use of similar work." *Thornton v. J. Jargon Co.*, 580 F. Supp. 2d 1261 (M.D. Fla. 2008) (citing *Montgomery v. Noga*, 168 F.3d 1282, 1295 n.19 (11th Cir. 1999)).

As evidence of the fee that Oppenheimer would have charged Defendant for the uses at issue herein, Plaintiff submits the Declaration of David Oppenheimer. (Oppenheimer Decl. ¶¶ 11-14). Specifically, if Defendants had requested a license to reproduce and display his Work on over 12 different websites for a period of 2 years, he would have charged $9,570. (Oppenheimer Decl. ¶ 11).

Oppenheimer further declared that the licensing fees alone do not take into account the scarcity of the photograph at issue, which also increases its value in this case. (Oppenheimer Decl. ¶ 12). Scarce images typically demand a much higher fee than common images. (Oppenheimer Decl. ¶¶ 13-14). In this case, Oppenheimer created the Work, while he was in a small private aircraft that he had secured himself for the sole purpose of capturing aerial images of the Elk Banner Mountain area. (Oppenheimer Decl. ¶ 3 and 13). In order to capture the sweeping and breathtaking beauty depicted in the Work, Oppenheimer reached with his camera outside the opended canopy of the aircraft into the Windstream while managing to steady his camera and preventing the lens from being ripped off its mount with

a firm grip, and precisely frame the natural mountain image by adjusting the angle and positioning of the shot. (Oppenheimer Decl. ¶ 3 and 13). The precise positioning of photograph, camera angle, lighting balance and timing were carefully crafted Oppenheimer. (Oppenheimer Decl. ¶ 3 and 13). Significant technical attributes were required to make the Work including, monitoring the changes in light and natural color, monitoring the angle of the mountain in relation to both the sun and the aircraft, and using advanced photo techniques, both in-camera and via post-production software, to ensure a common brightness, contrast, clarity, color temperature, color saturation, color tonality, and image noise reduction. (Oppenheimer Decl. ¶ 3 and 13). Additionally, the Work was created using a camera system valued at several thousand dollars. (Oppenheimer Decl. ¶ 13).

Further, the Work has now lost significant value to its scarcity by the continuing dissemination and association of the image with Defendants and their property. (Oppenheimer Decl. ¶ 18). Accordingly, Oppenheimer believes his actual damages to be $47,850, after considering a scarcity multiplier of 5 to the 2 year licensing fee of $9,570. (Oppenheimer Decl. ¶ 14). See *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 394 (3d Cir. 2016) (affirming a jury verdict of $1.6 million where the sum included a three to five times the benchmark because of the scarcity factor).

Additionally – although Oppenheimer's investigation shows that Defendants' uploaded his Work to several select websites on or about July 5, 2017 – because Defendants refused to participate in discovery or otherwise defend this matter, Oppenheimer is without information to identify exactly how long they used his Work for their own commercial purposes. (Oppenheimer Decl. ¶ 20). As such – and because Defendants continue to publish Oppenheimer's Work without license or authorization – Oppenheimer's license fee is

calculated with a term of 2 years, which is Oppenheimer's understanding of how long the Work has been displayed. (Oppenheimer Decl. ¶ 9).

The damages allowed under 504(b) do not end with Oppenheimer's actual damages. By allowing a copyright owner to obtain both actual damages suffered and any profits of the infringer that are attributable to the infringement, the Copyright Act aims to both compensate for the injury resulting from infringement and to strip the infringer of the profits generated from infringement, in order to "make[] clear that there is no gain to be made from taking someone else's intellectual property without their consent." *Walker v. Forbes, Inc.*, 28 F.3d 409, 412 (4th Cir. 1994).

However, Defendants refusal to cooperate in discovery has prevent Oppenheimer from identifying the amount of profits related to their infringing uses of Oppenheimer's Work. To establish Defendants profits, a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Defendants solely control all information concerning their gross revenue related to their infringing uses of the Work, and they have stymied Oppenheimer's ability to present that evidence to the Court. As such, an award of just the demonstrated $47,850 in actual damages is inadequate in this case.

### ii. Statutory Damages are Appropriate for Willful Copyright Infringement

Pursuant to 17 U.S.C. § 504(c), Oppenheimer may elect to recover statutory damages for Defendants' infringement of his exclusive rights in the Work, and enhancement of such statutory award based upon the willfulness of such infringement. Specifically, pursuant to 17 U.S.C. § 504(c)(2), the Court in its discretion may increase an award for statutory damages up to $150,000.00 when infringement was committed willfully.

In awarding enhanced damages in the context of Section 504(c)(2), "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." *Cable/Home Communication Corp. v. Network Productions*, 902 F.2d 829, 851 (11th Cir. 1990) (internal quotation omitted). Specifically, when an infringing party does not provide expenses saved and profits reaped by the infringing party, the court will instead only look to the actual damages and willful conduct and award an amount of two to three times actual damages to fully compensate Plaintiff and adequately deter future conduct like that of the Defendant. See *Major Bob Music v. Stubbs*, 851 F. Supp. 475, 481 (S.D. Ga. 1994) (plaintiffs' request of statutory damages of an amount approximately three times what the Defendant would have paid to be licensed is a modest, just and appropriate award under section 504(c)"); See also *Barnstormers, Inc. v. Wing Walkers, LLC*, 2011 U.S. Dist. LEXIS 47143 *15 (W.D. Tex. May 3, 2011) ("in light of Plaintiff's $6,000 in actual damages and Defendants' willful conduct, the Court finds a just award of statutory damages to be three times Plaintiff's actual damages, or $18,000"); *Cynthia Hunt Prods. Ltd. V. Evolution of Fitness Houston Inc.*, 2007 U.S. Dist. LEXIS 77630 *6 (S.D. Tex. Oct. 18, 2007). Here, the actual damages in the amount of $47,850 multiplied by two is the sum of $95,700, and when multiplied by three comes to the total of $143,550.

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work. See 17 U.S.C. § 504(c)(1). However, as discussed hereinabove, Defendants' conduct, as well as their decision not to defend against Oppenheimer's claim, their clear notice of Oppenheimer's ownership and rights, and their continued post-notice use of the Work, all demonstrate that their conduct is willful.

Given the circumstances of the instant case, Oppenheimer submits that an appropriate award of statutory damages under 17 U.S.C. § 504(c)(2) is at least $143,550 and up to $150,000, in order to accomplish full compensation to the Oppenheimer for the damages suffered, to create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual damages and to deter future violations of copyright law.

### iii. Statutory Damages are Appropriate for Violations of the DMCA

At any time before final judgment is entered, a party may elect to recover an award for statutory damages *for each violation* of 17 U.S.C. § 1202 in the sum of not less than $2,500 or more than $25,000. 17 U.S.C. § 1203(c)(3).

Damages under the DMCA are available for each violation of §1202, not per copyrighted work. 17 U.S.C. § 1203(c)(3). Consequently, each instance in which a defendant posts an offending photograph to the internet constitutes a separate violation, accruing a separate DMCA penalty. *Agence France Presse v. Morel*, 934 F.Supp.2d 547, 583 (S.D.N.Y. 2013). Here, Defendants removed Oppenheimer's CMI and made – as shown in the Complaint – posted the infringing photograph to at least 12 separate travel websites all over the Internet. Decl. (ECF No. 1, ¶ 11; Oppenheimer Decl. ¶ 9). Accordingly, Oppenheimer is entitled to 12 separate DMCA penalties.

Oppenheimer has produced affidavit evidence demonstrating the loss in value of his copyright and the potential of the Work becoming an orphan work due to removal of his CMI. (Oppenheimer Decl. ¶ 19). The removal of Oppenheimer's CMI interfered with his actual and prospective relationships with clients who might otherwise compensate Oppenheimer for the licensed use of his image. (Oppenheimer Decl. ¶ 18-19).The removal of Oppenheimer's CMI prevents him from granting any broadly exclusive license in the Work to a third party, and even

if a third party does not require an exclusive license, few such clients would consider licensing Oppenheimer's image for use in connection with services similar to those provided by the defendant. (Oppenheimer Decl. ¶ 18-19). The removal of Oppenheimer's CMI eliminated his right and ability to control the use and transmission of the Work and made it vulnerable to becoming an orphan work. (Oppenheimer Decl. ¶ 18-19).

As such, Oppenheimer requests the Court award $10,000 (which represents less than half of the statutory maximum) for each of Defendants' 12 blatant violations of the DMCA, for a total award of $120,000.

### iv. Full Costs and Reasonable Attorney's Fees are Appropriate

Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party… the court may also award reasonable attorney's fee to pay the prevailing party as part of the costs." Upon entry of a final judgment, Oppenheimer is the prevailing party in this action. In view of the willful nature of Defendants' infringement, their complete refusal to engage Oppenheimer and/or the undersigned counsel in any discussions regarding their blatant infringement, their continued efforts to evade service of the Complaint, and their failure to defend or otherwise participate in this action (all leading to unjustified delays and increased costs and fees), an award of full costs and attorney's fees to Oppenheimer is appropriate.

Accordingly, Plaintiff requests the Court to award costs and attorney's fees in the amount of $4,290.73, consisting of fees in the amount of $3,497.50 and costs (including process server and private investigator fees) in the amount of $793.23. The amount and reasonableness of the costs and fees are established by the Declaration of Dana A. LeJune submitted concurrently herewith.

### v. Entry of Permanent Injunction is Appropriate

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. Injunctions are regularly issued pursuant to Section 502 because "the public interest is the interest in upholding copyright protections," and court also regularly issue injunctions as part of default judgments. Arista Records, 298 F.Supp.2d at 1314 (entering permanent injunction against defendants with respect to plaintiff's copyrighted work, including plaintiff's work to be created in the future).

As established by the well-pleaded facts of the Complaint, and admitted by Defendants' default, this Court has proper jurisdiction over this action. (ECF No. 1, ¶¶ 1-2). Defendants conduct has caused and any continued infringing conduct will continue to cause irreparable injury to Oppenheimer, such that Oppenheimer has no adequate remedy at law. (ECF No. 1, ¶¶ 25-39). Defendants' continued use of Oppenheimer's Work for their own commercial and financial benefit without compensation to Oppenheimer impairs the market value of the Work by diluting its publicity and through its affiliation with Defendants and their property.[5] (Oppenheimer Decl., ¶ 18). Additionally, potential customers who otherwise might have purchased a license for Oppenheimer's Work will not pay such fees if they see other commercial enterprises taking and using the Work for their own commercial purposes without paying any fee at all. (Oppenheimer Decl., ¶ 18).

---

[5] As the evidence shows, Defendants have continued displaying infringing copies of Oppenheimer's Work online: for example, https://s-ec.bstatic.com/images/hotel/270x200/105/105127550.jpg

Accordingly, Oppenheimer requests that the Court enter a permanent injunction against Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants, prohibiting them from (a) directly or indirectly infringing Oppenheimer's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Oppenheimer's Work or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted Work.

## V. Conclusion

For the foregoing reasons, Oppenheimer respectfully requests the Court to enter final default judgment against Defendants James Sean Griffin and Jennifer Fowlkes Griffin; award Oppenheimer maximum statutory damages in the amount of $150,000 under 17 U.S.C. § 504 for defendant's copyright infringement; award Oppenheimer $10,000 in statutory damages per each of Defendants' 12 violations of the DMCA under 17 U.S.C. § 1203, totaling $120,000; full costs and attorney's fees, and prejudgment interest in the foregoing amounts; permanently enjoin Defendants from infringing activities; and for any other relief the Court deem just and proper. A proposed order is filed herewith.

**Date: October 3, 2019**

                                                              **LEJUNE LAW FIRM**

                              By:   /s Dana A. LeJune
                                    Dana A. LeJune
                                    dlejune@triallawyers.net
                                    Texas Bar: 12188250
                                    NC Bar: 49025
                                    7 Orchard Street, Suite 200
                                    Asheville, North Carolina 28801

828.774.5800 Phone

HOUSTON OFFICE

1225 North Loop W.
Suite 825
Houston, Texas 77008
713.942.9898 Phone
713.942.9899 Fax
*Attorneys for Plaintiff*