# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DAVID OPPENHEIMER, | § § § | |
| Plaintiff, | § | CA No. **1:18-cv-00272-MR** |
| | § § | |
| v. | § § | |
| JAMES SEAN GRIFFIN and | § | |
| JENNIFER FOWLKES GRIFFIN, | § § | |
| Defendants. | § § § | |

## DECLARATION OF DAVID GORDON OPPENHEIMER IN SUPPORT OF MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

I, David Gordon Oppenheimer state the following:

1. I am over the age of 18 and otherwise competent to testify. I make the following statements based on personal knowledge.

2. I reside in the United States in North Carolina. I am a professional photographer, and create photographs throughout the United States. I am the owner of my photography company, Performance Impressions, LLC, which has a website of https://performanceimpressions.com. My portfolio also includes concert, aerial, travel, and professional event photography.

3. In the winter of 2013, I created a photograph of Beech Mountain (the "Work"). To get the best image, I boarded a 1977 Grumman Cheetah AA-5 aircraft, and flew at a low altitude below mountaintop level (which is an inherently risky endeavor). Because this specific aircraft has a minimum turn radius and subpar climb rate, I worked closely with the pilot to line up the shot with the optimal angle, view, and lighting. Prior to the final approach for the shot, the pilot

reduced the speed of the aircraft close to the stall speed[1] allowing me to open the canopy and reach my arms out of the aircraft. With the camera past the wing, I was able to photograph through the open air for maximum clarity and no distortion from the curved Plexiglas canopy. In the wind-stream, it was crucial that I kept one hand on the lens to prevent the wind from ripping the dense magnesium metal lens off the camera and damaging the tail-end of the aircraft, including the elevator and rudder – which are both comparably made of hollow tin.

4. Extreme effort, including study, physical and mental preparation, and professional techniques were applied in the creation of the Work in order to capture the best possible imagery of the subject, while also maximizing safety.

5. At all times relevant to this claim, I have been and I am now the sole owner and proprietor of all right, title, and interest in and to the copyrights in the Work. I obtained registration with the U.S. Copyright Office in March of 2103, and received the registration number, VAu 1-132-213.

6. On or about August 3, 2017, I discovered that the Defendants – James and Jennifer Griffin, 2 citizens of Florida who own, operate, and lease property in the Elk Banner Mount area of North Carolina – were using my Work without a license to advertise and market their property on multiple websites, including but not limited to booking.com, expedia.com, Travelocity.com, vrbo.com, and ebookers.ie. Specifically, I discovered Defendants' infringements on the following websites:

   a. https://www.booking.com/hotel/us/siso-5350.html?aid=356980
   b. https://www.vrbo.com/4609127ha
   c. https://www.rentbyowner.com/property/siso-5350/BC-2478678

---

[1] Reducing to such a slow speed at low altitude in such a mountainous terrain only adds to the danger, since altitude is needed to recover from recover from a stall and there is limited open airspace in the mountains and even less opportunities for identifying and/or reaching an emergency landing field in the event of engine failure.

d. https://www.expedia.com/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
   e. https://www.travelocity.com/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
   f. https://www.ebookers.ie/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
   g. https://aff.bstatic.com/images/hotel/max500/105/105127550.jpg
   h. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c10.jpg
   i. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c8.jpg
   j. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c6.jpg
   k. https://www.j2ski.com/ski_hotels/USA/Banner_Elk/Siso_5350.html

7. For many years, it has been my custom and business practice to display my copyright management information ("CMI") on his copyrighted photographs when they are first published. I do this to ensure that anyone who views my works understands that I own all right and title. In this case, the Work, as first published, prominently displayed my CMI in the caption and with a watermark, as well as embedded in the metadata of the Work. When I first discovered Defendants' infringing copy of my Work online, I also discovered that Defendants had removed my CMI both from the face of the image and from the metadata.

8. Even after Defendants were placed on notice of their infringement, they continued to publicly display my Work – without license or payment – on the following URLs:

   a. https://www.expedia.com/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
   b. https://www.travelocity.com/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
   c. https://www.ebookers.ie/Boone-Hotels-Siso-5350-Slope-Side-Cabin-Beech-Mountain-With-AIR-Conditioning.h19326288.Hotel-Information
   d. https://aff.bstatic.com/images/hotel/max500/105/105127550.jpg
   e. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c10.jpg
   f. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c8.jpg

      g. https://odis.homeaway.com/odis/listing/1236946b-daec-4b1d-89da-3ec804d9d74e.c6.jpg
      h. https://www.j2ski.com/ski_hotels/USA/Banner_Elk/Siso_5350.html
      i. https://www.booking.com/hotel/us/siso-5350.html?aid=356980

9. The uses of my Work were for Defendants' sole economic benefit. Although I have not been able to conduct discovery in this action since Defendants have defaulted, it is my understanding through my own due diligence that the infringing image was published on over 12 different websites and has remained displayed by Defendants for a period of 2 years.

10. I never authorized and/or licensed the use of the Work for any purpose to Defendants.

11. If I were to have entered into a license with Defendants, prior to the infringement permitting them 1) to display the Work on over 12 different websites, 2) with my CMI removed; 3) without crediting me as the creator of the Work; and 4) to display the same for a period of 2 years, I would have required a license fee in the amount of $9,570.

12. This licensing fee does not consider the scarcity of my Work, which is incredibly rare and was very difficult to create.

13. As stated above, I created this Work while I was in a small private a 1977 Grumman Cheetah AA-5 aircraft which I had secured myself for the purpose of capturing aerial images of the Elk Banner Mountain area. In order to capture the sweeping and breathtaking beauty depicted in the Work, I had to reach outside the opened canopy of the craft while steadying my camera and precisely frame the natural mountain image by adjusting the angle and positioning of the shot. The precise positioning of photograph, camera angle, lighting balance and timing were carefully crafted. Significant technical attributes were required to make the Work including, monitoring the changes in light and natural color, monitoring the angle of the mountain in relation to both the sun and the aircraft, and using advanced photo techniques, both in-camera and via post-production software, to ensure a common brightness, contrast, clarity, color

temperature, color saturation, color tonality, and image noise reduction. Additionally, the Work was created using a camera system valued at several thousand dollars.

14. Considering a scarcity multiplier of 5 to the licensing fee of $9,570, I believe my actual damages from the use of my Work to be $47,850.

15. Although I am not a lawyer, I understand that I may elect statutory damages instead of actual damages.

16. Defendants knowingly and purposefully removed my copyright notice from my image. They had clear knowledge that I created the image, owned all rights to same, and that all rights were reserved by me. Notwithstanding this, they willfully removed my CMI and then plastered the image with their own form of branding on at least 12 separate travel websites all over the Internet. This is intentional deletion of my CMI. For these reasons, I believe that I should be entitled to the statutory damages in the amount of $10,000 for each of Defendants' 12 blatant postings without my CMI. This represents less than half of the statutory maximum allowed under the DMCA.

17. Additionally, Defendants' willful use of my Work, with completed disregard for my intellectual property rights merits an award of enhance statutory damages ranging from $30,000 to $150,000 for its infringement under 17 U.S.C. § 504(c)

18. The ability of Defendants to reproduce, modify, rebrand my Work, and display copies of the Work for their commercial benefit without compensation to me destroys the market value of my Work. Their use and exposure of my work as affiliated with their business for a period of 2 years dilutes also dilutes its value. I also cannot grant an exclusive license for this image to anyone as the image has already been published by Defendants. Additionally, the association of my Work with Defendants further harms the licensing potential of the image. Commonly,

before a license is granted for commercial use, all prior uses of that image must be disclosed. Now, potential licensees of my Work will not pay the high licensing fees that my Work deserves because they will see that Defendants used my Work for their own commercial purpose without paying any fee at all.

19. Additionally, the removal of my CMI from the Work makes it vulnerable to becoming infringed again and again and to becoming an orphan work. This greatly dilutes the value of the Work and diminishes its licensing potential.

20. Given the above-calculated actual damages of $47,850, if this were multiplied by three, the statutory damages would be $143,550. These calculations do not even factor in the profits of Defendants, which are unknown to me without discovery. As such, I believe that I am entitled to maximum statutory damages in the amount of $150,000.

21. For the above-referenced reasons, I believe I am entitled to $10,000 (which represents less than half of the statutory maximum) for each of Defendants' 12 blatant violations of the DMCA, for a total award of $120,000.

Under penalty of perjury I affirm that the above statements are true and correct.

Executed this  3rd  day of  October , 2019.

By:_____
David Oppenheimer