IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:18-cv-00272-MR-WCM

| | | |
|---|---|---|
| DAVID OPPENHEIMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF DECISION** |
| vs. | ) | **AND ORDER** |
| | ) | |
| JAMES SEAN GRIFFIN and | ) | |
| JENNIFER FOWLKES GRIFFIN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Default Judgment [Doc. 16].

## I.  PROCEDURAL BACKGROUND

On September 24, 2018, the Plaintiff David Oppenheimer (the "Plaintiff") filed a complaint against the Defendants James Sean Griffin and Jennifer Fowlkes Griffin (collectively the "Defendants"), asserting claims for copyright infringement and violations of the Digital Millennium Copyright Act ("DMCA").  [Doc. 1].  On January 9, 2019, the Court filed an Order to Show Cause *sua sponte* instructing the Plaintiff to show good cause for the failure to effectuate service on the Defendants.  [Doc. 5].  On January 23, 2019, the

Plaintiff filed a Response to the Court's Show Cause Order explaining his good-faith yet unsuccessful attempts to serve the Defendants. [Doc. 7 at 2].

On February 4, 2019, the Court entered an Order granting 60 additional days for the Plaintiff to effectuate service on the Defendants. [Doc. 8]. On April 15, 2019, the Plaintiff filed a Motion for Service by Alternative Means and Request for Additional Time to Serve because of his continued inability to serve the Defendants. [Doc. 9]. On May 22, 2019, the Court entered another Order granting 60 additional days for the Plaintiff to effectuate service on the Defendants but denying the request for alternative service. [Doc. 10]. On July 2, 2019, the Plaintiff filed affidavits of service, indicating that the Defendants were served on June 13, 2019. [Docs. 11, 12]. On September 3, 2019, the Court entered an Order requiring the Plaintiff to either file an appropriate motion or otherwise take further action with respect to the Defendants or have his claims dismissed. [Doc. 13].

On September 3, 2019, the Plaintiff filed a Motion for Entry of Default against the Defendants for failure to answer or otherwise plead in response to the complaint. [Doc. 14]. On September 5, 2019, pursuant to Federal Rule of Civil Procedure 55(a), the Clerk entered default against the Defendants. [Doc. 15]. The Plaintiff now moves pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure for default judgment against the

Defendants, seeking the following relief: (1) a finding that the Defendants are liable for copyright infringement; (2) an award of statutory damages for copyright infringement; (3) an award of statutory damages for violations of the DMCA; (4) an award of costs and attorney fees; and (5) entry of a permanent injunction against the Defendants.  [Doc. 16].  The Court held a hearing on the Plaintiff's Motion on December 4, 2019.

## II.    STANDARD OF REVIEW

"To obtain a default judgment, a party must first seek an entry of default under Federal Rule of Civil Procedure 55(a)." Hayhurst v. Liberty Int'l Underwriters, No. 5:08-cv-5347, 2009 U.S. Dist. LEXIS 5347, at *2 (N.D.W.Va. Jan. 29, 2009); see Eagle Fire, Inc. v. Eagle Integrated Controls, Inc., No. 3:06-cv-264, 2006 U.S. Dist. LEXIS 41054, at * 14, 2006 WL 1720681 (E.D. Va. June 20, 2006) ("The entry of default is a procedural prerequisite to the entry of a default judgment.").  Rule 55(a) states that the clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After the clerk enters default, the party may seek a default judgment under Rule 55(b)(1) or (2), depending on the nature of the relief sought.  Rule 55(b) "authorizes the entry of a default judgment when a defendant fails 'to plead

or otherwise defend' in accordance with the Rules." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). By such a default, a defendant admits the well-pleaded factual allegations in the plaintiff's complaint. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001).

## III. PLAINTIFF'S FACTUAL ALLEGATIONS

The well-pleaded factual allegations of the Plaintiff's complaint are deemed admitted by virtue of the Defendants' default. Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009). The following is a summary of the relevant and admitted facts.

The Plaintiff is a citizen of North Carolina engaged in the professional photography business. [Doc. 1 at ¶ 1]. The Plaintiff registered the photograph at issue in this matter (the "Work") with the Register of Copyrights at the U.S. Copyright Office. [Id. at ¶ 8; Ex. B]. The Plaintiff is the sole owner and proprietor of all right, title, and interest in and to the copyrights of the Work. [Id. at ¶ 6]. The Work consists of an aerial photograph of the Beech Mountain Ski Resort. [Doc. 1-2].

The Plaintiff makes his photographs available online for print and licensing through his website. [Id. at ¶ 7]. The Plaintiff's custom and business practice is to display his copyright management information ("CMI") on his copyrighted photographs when they are first published to the website.

4

[Id.].  The Work displayed the Plaintiff's CMI and a watermark when it was first published.  [Id. at ¶ 10].

The Defendants are citizens of Florida.  [Id. at ¶¶ 4-5].  The Defendants own a vacation rental property in North Carolina.  [Id. at ¶ 2].  As part of their advertisements for that property, the Defendants uploaded and published, or directed others to upload and publish, the Work to several websites on or about July 5, 2017.  [Id. at ¶11].  That photograph is used to identify the location of the Defendants' property immediately adjacent to the ski slopes at the Beech Mountain Ski Resort.  [Doc. 1-6].  The copies of the Work displayed on those websites removed the CMI and watermark from the Work.  [Doc. 1 at ¶¶ 19-20].

On or about August 3, 2017, the Plaintiff discovered the Defendants' infringement on the copyrights related to the Work.  [Id. at 11].  The Plaintiff sent cease and desist letters to the Defendants via email on December 12, 2017 and August 18, 2018.  [Id. at ¶ 13].  Despite those letters, the

Defendants have continued to infringe the Plaintiff's copyrights by displaying the Work on several websites. [Id. at ¶ 13].[1]

## III. DISCUSSION

### A. Jurisdiction is Proper.

District courts have "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights, and trademarks." 28 U.S.C. § 1338(a); see also 28 U.S.C. § 1331. Accordingly, the Court has subject matter jurisdiction over the above-captioned civil action as it was brought by the Plaintiff against the Defendants for copyright infringement pursuant to the Copyright Act, 17 U.S.C. §§ 1 et seq., and the DMCA, 17 U.S.C. § 1202. [Doc. 1 at ¶ 1].

The Court also must have personal jurisdiction over the Defendants as required to render a valid default judgment. For the Court to have personal

_____

[1] The Plaintiff attached an e-mail to the complaint from the Plaintiff's counsel to the Defendants. [Doc. 1-9]. In that e-mail, the Plaintiff's counsel recounts a phone call he had with the Defendants in which the Defendants told him that their "lawyer brother-in-law" advised them to ignore the Plaintiff's claim and not negotiate a settlement. [Id. at 1]. Nevertheless, the Plaintiff's counsel continued the conversation and told the Defendants that they had received "TERRIBLE advice" and should settle the case. [Id.]. To the extent that the Defendants' statement indicated that they may be represented by counsel, the Plaintiff's counsel is admonished to adhere to North Carolina Rule of Professional Conduct 4.2, which forbids him from communicating "about the subject of the representation with a person [he] knows to be represented by another lawyer in the matter." Alternatively, if the Defendants were not represented, the Plaintiff's counsel is reminded that North Carolina Rule of Professional Conduct Rule 4.3 forbids him from giving "legal advice" to an unrepresented person "other than the advice to secure counsel, if [he] knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of [his] client."

jurisdiction, the Plaintiff must prove, by a preponderance of the evidence, that exercising jurisdiction will (1) comply with the forum state's long-arm statute and (2) comport with the due process requirements of the Fourteenth Amendment. See Carefirst of Maryland, Inc. v. Carefist Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). Because North Carolina's long-arm statute has been construed to extend as far as due process allows, Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001), this two-pronged test is collapsed into the single inquiry of whether the exercise of personal jurisdiction over the defendant comports with due process. Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014).

Exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has sufficient "minimum contacts" with the forum, such that to require the defendant to defend its interest in that state "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The sufficiency of the contacts depends on the circumstances of the case. A court can have personal jurisdiction over a defendant for all claims if the defendant's contacts with the forum state are continuous and systematic. This is referred to as "general jurisdiction." However, more

limited contacts can be sufficient to establish personal jurisdiction over a defendant where those contacts relate to the substance of the particular claim being asserted. This is referred to as "specific jurisdiction." See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984). In determining whether specific jurisdiction exists, the Court considers (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002) cert. denied, 537 U.S. 1105 (2003). "[T]he defendant's conduct and connection with the forum State [must be] . . . such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The Plaintiff's complaint contains jurisdictional facts sufficient to support the exercise of personal jurisdiction by setting forth that (1) the Defendants have done business within North Carolina [Doc. 1 at ¶ 11]; (2) the Defendants own property in North Carolina [Id.]; and (3) the subject of the Defendants' infringement depicts scenes within this forum and attempts to drive business towards this forum. [Id. at 1; Docs. 1-2, 1-3, 1-4, 1-5, 1-6,

1-7]. Given such contact with this forum, the Defendants should have reasonably anticipated being haled into court here, particularly as relates to their North Carolina property and any activities attendant thereto.

The Plaintiff has also complied with his obligations to effectuate service of process by depositing Summons and a copy of the complaint with Federal Express via two-day delivery to the Defendants and obtaining a "delivery receipt," pursuant to Fed. R. Civ. P. 4(e)(1). Finally, venue is proper under 28 U.S.C. § 1391(b)-(c).

### B. The Defendants are Liable for Copyright Infringement.

"Copyright infringement occurs when a person 'violates any of the exclusive rights of the copyright owner.' 17 U.S.C. § 501(a). Therefore, the two elements of an infringement claim are (1) ownership of a valid copyright and (2) encroachment upon one of the exclusive rights afforded by the copyright." Elektra Entertainment Group, Inc. v. Doe, No. 5:08-cv-1159-FL, 2008 WL 5111886 (E.D.N.C. Dec. 4, 2008) (Flanagan, J.) (citing Avtec Systems, Inc. v. Peiffer, 21 F.3d 568, 571 (4th Cir. 1994)).

"A certificate of registration issued by the Copyright Office is 'prima facie evidence of the validity of the copyright and of the facts stated in the certificate,' such as ownership." Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 428 (4th Cir. 2010), as amended (Aug. 24,

2010) (citing 17 U.S.C. § 410(c)).  The Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) and was given a Certificate of Registration reflecting his copyright in the Work as of March 11, 2013.  [Doc. 1-3].  As such the Plaintiff has demonstrated that he owns valid copyright to the Work.

The Plaintiff also must establish that the Defendants engaged in unauthorized copying of the work protected by the copyright.  The Plaintiff's complaint contains sufficient factual allegations to find that the Defendants copied the Work.  [Doc. 1 at ¶ 11, 16, 20-22].  The Plaintiff has also produced documents showing that the Defendants cause the Work to be published on several websites.  [Doc. 1-4, 1-5, 1-6, 1-7].  Those websites display an exact copy of the Work with the Plaintiff's CMI removed.  [Id.; Doc. 16-1 at ¶ 6].  Accordingly, the Plaintiff has pled sufficient factual allegations, which are deemed admitted by the Defendants' default, to establish that the Defendants copied the Work and that the Defendants are liable for copyright infringement.

## C.    The Defendants are Liable for Violations of the DMCA.

The DMCA prohibits a person, "without the authority of the copyright owner or the law," either to "intentionally remove or alter any copyright management information" 17 U.S.C. § 1202(b)(1), or to "distribute" work "knowing that copyright management information has been removed or

altered," id. § 1202(b)(3).  The DMCA requires that the action be taken by a person "knowing or . . . having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement."  Id. § 1202(b).

Taking the allegations in the Plaintiff's complaint, along with the evidence set forth in the Plaintiff's declaration submitted in support of this Motion for Default Judgment, the Court finds that the Plaintiff has established eight separate violations of the DMCA, consisting of the posting of the Work on eight different travel websites with the CMI removed, without authorization.  [Doc. 1 at ¶ 11].[2]  The Court also finds that the Defendants distributed the Work while knowing or having reasonable grounds to know that the Plaintiff's CMI had been removed or omitted without authorization and that the action would induce, enable, facilitate, and/or conceal an infringement of the Plaintiff's copyrights.  [Id. at ¶ 21-23].  Accordingly, the Plaintiff has established eight violations of the DMCA.  17 U.S.C. § 1202(b).

### D.    Damages

#### 1.    Default Judgment Damages Standard

---

[2] While the Plaintiff's complaint alleged that the Defendants have committed twelve DMCA violations, [Doc. 1 at ¶ 11], and the Plaintiff's Motion for Default Judgment lists eleven DMCA violations, [Doc. 16 at 2-3], the Plaintiff testified during the hearing the Court held on this Motion that he only presents claims against the Defendants for eight DMCA violations.

Because a party's default does not suggest that the party has admitted the amount of damages that the moving party seeks, the Court still must "assure that there is a legitimate basis for any damage award it enters." Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003); see also Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) ("default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). As such, "even upon default, a court may not rubber-stamp the non-defaulting party's damages calculation." Overcash v. United Abstract Grp., Inc., 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008). Instead, the moving party must "provide the court with sufficient information to ascertain monetary damages with reasonable certainty." Int'l Painters & Allied Trades Indus. Pension Fund v. Dettrey's Allstate Painting, LLC, 763 F. Supp. 2d 32, 36 (D.D.C. 2011). That information may be presented by way of an affidavit, but an affidavit that "consists only of conclusory statements generally will not be sufficient for determining default judgment liability." Lopez v. XTEL Constr. Grp., No. PWG–08–1579, 2011 WL 6330053, at *3 (D. Md. Dec. 16, 2011) (citing Hartford Fin. Servs. Grp., Inc. v. Carl J. Meil, Jr., Inc., No. WDQ–10–2720, 2011 WL 1743177, at *8 (D. Md. May 5, 2011).

## 2. Damages for Copyright Infringement

For the Defendants' copyright infringement, the Plaintiff seeks "injunctive relief, disgorgement of defendants' profits attributable to the infringements, actual damages, statutory damages, and other relief set forth in the Act." [Doc. 1 at ¶ 17]. Under the Copyright Act, a plaintiff may elect to recover either actual or statutory damages. See 17 U.S.C. § 504(b) (A plaintiff can "recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."); 17 U.S.C. § 504(c)(1) (A plaintiff "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements . . . with respect to any one work . . . in a sum of not less than $750 or more than $30,000."). The Plaintiff made clear at the hearing that he is electing statutory damages rather than actual damages, and that the evidence regarding actual damages was presented only as it is instructive regarding the magnitude of an award of statutory damages.

Within the permissible range of statutory damages, the Court enjoys wide discretion to set the amount of damages. See F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 231–32 (1952). While "there need not be a direct correlation between statutory damages and actual damages,

the statutory award should bear some relation to actual damages suffered."

Reilly v. Commerce, No. 15CV05118PAEBCM, 2016 WL 6837895, at *9

(S.D.N.Y. Oct. 31, 2016) (citations and quotations omitted).

> Although the Fourth Circuit has not specifically described how the statutory damages should be determined, the Second Circuit has provided guidance regarding factors to be considered, as follows: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

Oppenheimer v. Holt, No. 1:14-CV-000208-MR, 2015 WL 2062189, at *2

(W.D.N.C. May 4, 2015) (citing Bryant v. Media Right Prods., Inc., 603 F.3d

135, 144 (2d Cir. 2010)). As such, the Court will examine the factors

discussed in Holt to determine the appropriate statutory damages award in

this case.

Under the first Holt factor, the complaint does not present any

allegations regarding the Plaintiff's state of mind other than to allege that the

Plaintiff intentionally removed the CMI. [Doc. 22]. The Plaintiff presented no

other evidence regarding this factor. Under the second Holt factor, the

complaint does not contain any allegations that the Defendants reaped any

specific profits as a result of their infringement, only that the Defendants

"benefitted from their infringements of the Work." [Doc. 1 at ¶ 17]. The Plaintiff, however, argues that the Defendants' refusal to participate in this case has made it impossible to ascertain "any profits of the infringer that are attributable to the infringement" for inclusion in the actual damages. [Doc. 16 at 14]. While the Plaintiff rightly notes that the Defendants' default has made it difficult to ascertain the profits they received from the infringement, the use of the Work to identify the location of the rental property appears to be a minor factor in any profit that the Defendants' received. The Court finds, based on the evidence the that Plaintiff presented, that the Defendant's posted several other photographs depicting the rental property showing its beauty and surroundings. These other photographs would appear to be more material to any potential rental than simply showing its location.

As to the third Holt factor, the complaint does not provide any allegations regarding the actual revenue losses sustained by the Plaintiff. In support of the Motion for Default Judgment, the Plaintiff submitted an affidavit stating that he would have charged the Defendants $9,570 to display the Work in the manner it was displayed. [Doc. 16-1 at ¶ 11]. At the hearing that the Court held on this matter, the Plaintiff testified that the $9,570 valuation in his affidavit was obtained from a photography pricing program called fotoQuote, which calculated the price based on variables associated

with the photograph that the Plaintiff entered into the program. The $9,570 price from fotoQuote, however, does not show the revenue lost due to the Defendants' copyright infringement because it does not accurately reflect the price that the Defendants would have paid to license the Work. A party seeking to advertise a vacation rental property would not reasonably pay $9,570 for a photograph showing the location of that property. Moreover, the Plaintiff entered variables into the fotoQuote program that included premium conditions that increase the quote beyond the fair market value that a customer or licensee would be willing to pay. For instance, the Plaintiff testified that one of the conditions he put into fotoQuote was that the Work would be displayed without crediting the Plaintiff as the creator. [Doc. 16 at 19]. A party purchasing the Work to use in connection with advertising a rental property, however, has no reason to not credit the Plaintiff as the creator of the photograph. As such, the $9,570 price from fotoQuote is not reflective of the Plaintiff's lost revenue here.

The Plaintiff testified at the hearing that the Work is more valuable than a typical photograph of the Beech Mountain Ski Resort because it utilizes the Plaintiff's special techniques and methods for capturing these types of photographs and because it captures the area after a "record snowfall." The Plaintiff, however, does not provide any evidence from past sales or licensing

agreements to show that his particular techniques and methods make his photographs more valuable than other ordinary photographs. The Plaintiff also admitted during his testimony that no customer or licensee has ever paid $9,570 to license or purchase one of his photographs, and that the amount produced by fotoQuote was in substance an initial negotiating position. Moreover, while the Plaintiff claims that the snowfall captured in the Work is particularly remarkable, the Court takes judicial notice of the fact that the Beech Mountain Ski Resort is situated in a part of the state that regularly receives large snowfalls and that the image captured in the Work is similar to other photographs available online, further rendering the Plaintiff's $9,570 valuation unrealistic. As such, the Court cannot conclude that the Defendants' copyright infringement caused the Plaintiff to lose the $9,570 that he claims.[3]

---

[3] The Plaintiff further argues that his $9,570 valuation should be multiplied by five to $47,850 because "the Work has now lost significant value to its scarcity [sic] by the continuing dissemination and association of the image with the Defendants and their property." [Doc. 16 at 13] (citing [Doc. 16-1 at ¶ 18]. In support of his argument, the Plaintiff cites Leonard v. Stemtech Int'l Inc, 834 F.3d 376, 394 (3d Cir. 2016). The copyrighted images at issue in Leonard, however, were scientific images that were so valuable and rare that a premium multiplier had to be applied to their value to accurately reflect the fair market value of the copyright. That is not the case here, where the Work lacks special value and the Plaintiff admits that he only would have charged $9,570 to license the Work. [Doc. 16-1 at ¶ 11]. Moreover, the Plaintiff provides no evidence to support a finding that $47,850 reflects his loss in revenue resulting from the Defendants' infringement.

Under the fourth, fifth, and sixth <u>Holt</u> factors, the Court notes the need for a statutory damages award that will provide a deterrent effect on the infringer and third parties and acknowledge the Defendants' lack of cooperation in this case. Under the sixth <u>Holt</u> factor, however, the Court observes that the Plaintiff seeks a very high damages award relative to the harm caused by the Defendants' actions and that the Plaintiff has filed several other copyright infringement lawsuits in this District within the last year alone. <u>See, e.g.</u>, <u>Oppenheimer v. Episcopal Communicators, Inc.</u>, 1:19-cv-00282-MR (W.D.N.C. Sept. 30, 2019) (Reidinger, J.); <u>Oppenheimer v. Johnson</u>, 1:19-cv-00240-MR (W.D.N.C. Aug. 13, 2019) (Reidinger, J.); <u>Oppenheimer v. Morgan</u>, No. 1:19-CV-00002-MR (W.D.N.C. Jan. 3, 2019) (Reidinger, J.); <u>Oppenheimer v. Thurner</u>, 3:19-cv-00211-RJC-DCK (W.D.N.C. May 3, 2019) (Conrad, J.); <u>Oppenheimer v. Seago</u>, 1:19-cv-00132 (W.D.N.C. Apr. 18, 2019) (Reidinger, J.); <u>Oppenheimer v. Moore</u>, 3:19-cv-000240-GCM (W.D.N.C. Jan. 17, 2019) (Mullen, J.); <u>Oppenheimer v. Brafford</u>, 1:18-cv-00361 (W.D.N.C. Dec. 26, 2018) (Reidinger, J.); <u>Oppenheimer vs Mountain Area Health Educ. Ctr., Inc.</u>, 1:18-cv-00361-MR (W.D.N.C. Dec. 17, 2018) (Reidinger, J.). The numerous filings suggest that the Plaintiff's course of conduct is to seek "'copyright infringement damages not to be made whole, but rather as a primary or secondary revenue stream

. . . .'"  ME2 Prods., Inc. v. Ahmed, 289 F. Supp. 3d. 760, 764 (W.D. Va. 2018) (quoting Malibu Media, LLC v. [Redacted], Case No. PWG-14-261, 2017 WL 633315, at *3 (D. Md. Feb. 15, 2017).  In

As such, the Court finds that the minimum award of $750 for the Defendants' infringement is sufficient to compensate the Plaintiff and deter future copyright infringement.  Such an award is "consistent with a 'recent trend in courts across the country . . . to award the minimum statutory award of $750 per violation' in infringement cases brought by 'copyright holders who seek copyright infringement damages not to be made whole, but rather as a primary or secondary revenue stream . . . .'"  Id.; see, e.g., Malibu Media, LLC v. [Redacted], 2016 WL 245235, at *1 (awarding $750.00 per work in statutory damages); Malibu Media, LLC v. Powell, No. 1:15-CV-1211, 2016 WL 26068, at *1 (M.D. Pa. Jan. 5, 2016) (same); Malibu Media, LLC v. Saari, No. 1:14-cv-00860-JMS-MJD, 2015 WL 5056887, at *2 (S.D. Ind. Aug. 26, 2015) (same); Malibu Media, LLC v. Caswell, No. 2:14-cv-837, 2015 WL 3822904, at *2 (S.D. Ohio June 19, 2015) (same); Malibu Media, LLC v. Funderburg, No. 1:13-cv-02614, 2015 WL 1887754, at *4 (N.D. Ill. April 24, 2015) (same); I.T. Prods. LLC v. Huber, Case No. 2:16-cv-1199, 2017 WL 5379437, at *2 (S.D. Ohio Nov. 14, 2017) (same); ME2 Prods., Inc. v. Pumaras, No. CV 17-00078 SOM/RLP, 2017 WL 4707015, at *2 (D. Haw.

Oct. 19, 2017) (same); ME2 Prods., Inc. v. Fox, No. 3:17-CV-00057, 2018 WL 1470251, at *2 (E.D. Va. Mar. 26, 2018) (same); ME2 Prods., Inc. v. Mason, No. 3:17-CV-00058, 2018 WL 1470253, at *2 (E.D. Va. Mar. 26, 2018) (same); LHF Prods., Inc. v. Mart, No. 5:16-CV-00027, 2018 WL 4225043, at *2 (W.D. Va. Sept. 5, 2018) (same); LHF Prods., Inc. v. Lindvall, No. 5:16-CV-00030, 2018 WL 4211739, at *2 (W.D. Va. Sept. 4, 2018) (same). Accordingly, the Court finds an award of the statutory minimum of $750 without interest for the violation by the Defendants is adequate in this case.

### 3. Damages for DMCA Violations

For the Defendants' DMCA violations, the Plaintiff seeks "recovery of statutory damages from Defendants not less than $2,500 and not more than $25,000 for each act." [Doc. 1 at ¶ 23].

Under the DMCA, "[a]t any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages *for each violation* . . . in the sum of not less than $2,500." 17 U.S.C. § 1203(c)(3)(B) (emphasis added). "The DMCA does not define the scope or meaning of the phrase "each violation." Stockwire Research Grp., Inc. v. Lebed, 577 F. Supp. 2d 1262, 1266 (S.D. Fla. 2008) (citing id.). Courts, however, had held that "the term 'each violation' is best understood to mean

each violative act performed." McClatchey v. Associated Press, No. 305-CV-145, 2007 WL 1630261, at *6 (W.D. Pa. June 4, 2007) (citing 17 U.S.C. § 1203(c)(3)(B); see also Stockwire Research Grp., Inc., 577 F. Supp. 2d at 1267 (finding that defendants posted the protected material "on the internet on three separate occasions, and therefore committed three violative acts."); Granger v. One Call Lender Servs., LLC, 2012 WL 3065271, at *5, (E.D. Pa. July 26, 2012) (finding that the defendants "posted the infringing product onto the internet on six separate occasions . . . thereby committing six violative acts."). "[T]he other courts considering this question have uniformly followed [that] approach." Agence France Presse v. Morel, 934 F. Supp. 2d 547, 583 (S.D.N.Y. 2013). As such, the Court finds that the Plaintiff is entitled to damages for each instance where the Defendants posted the Work to the internet without the Plaintiff's CMI.

Here, the Plaintiff's Complaint and the other evidence establishes that the Defendants committed eight violations by posting the Work without the Plaintiff's CMI to eight different websites. [Doc. 1 at ¶ 11]. As discussed above, the harm resulting from the Defendants' acts is relatively minimal, rendering even the minimum award under the DMCA generous both in terms of remuneration and recovery for the Plaintiff and in terms of sanction and deterrence for the Defendants. As such, the Court awards the minimum of

$2,500 in statutory damages for each of the eight violations of the DMCA, for a total of $20,000.

### E. Attorneys' Fees.

The Plaintiff also seeks to recover his attorneys' fees under the DMCA. [Doc. 1 at ¶ 24].

The DMCA provides that the Court "in its discretion may award reasonable attorney's fees to the prevailing party." 17 U.S.C. § 1203(b)(5). "In deciding whether to award fees under the DMCA, the Court may consider the motive, reasonableness of the fee, deterrence and compensation, and the ability of the nonmoving party to pay." Dahn World Co., Ltd v. Chung, No. CIV. A. RWT06-2170, 2009 WL 277603, at *2 (D. Md. Feb. 5, 2009) (citing Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 234 (4th Cir. 1993).

As a threshold matter, the Plaintiff is eligible for an award of attorneys' fees as the prevailing party before this Court. 17 U.S.C. § 1203(b)(5). The Defendants' cavalier attitude regarding the infringement and their lack of participation in this action weighs in favor of awarding the Plaintiff's fee request. The other relevant factors, however, weigh against awarding attorneys' fees and expenses in this case. The Plaintiff's motive in bringing this claim does not support an award of attorneys' fees and costs because the Plaintiff appears to be using the copyright laws as a source of revenue,

rather than as redress for legitimate injury. Moreover, the Court does not find that the awarding of attorneys' fees would serve the goals of deterrence or compensation given the size of the statutory DMCA damages award in relation to the Defendants' wrongful conduct here. The judgment against the Defendants will serve as an adequate deterrent and the Plaintiff's attorneys can be compensated out of that award. As such, the Court will deny the Plaintiff's request for attorneys' fees.

### F. Permanent Injunction

The Plaintiff also seeks a permanent injunction

> [a]gainst Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants, prohibiting them from (a) directly or indirectly infringing Oppenheimer's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Oppenheimer's Work or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted Work.

[Doc. 16 at 19].

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem

reasonable to prevent or restrain infringement of a copyright." As such, the Court will enter a permanent injunction against the Defendants.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Default Judgment [Doc. 16] is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) The Plaintiff shall have and recover of the Defendants, jointly and severally a judgment of $750 pursuant to 17 U.S.C. § 504(c)(1), and a judgment of $20,000 pursuant to 17 U.S.C. § 1203(c), for a total judgment of $20,750.

(2) The Motion is **GRANTED** to the extent that a permanent injunction is entered against the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with the Defendants, prohibiting them from (a) directly or indirectly infringing David Oppenheimer's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from the Work or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying,

distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted work. This injunction shall take effect seven days from the issuance of this order.

(3) The Motion is **DENIED** with respect to the Plaintiff's request for attorney's fees.

A Judgment will be entered contemporaneously with this Order.

**IT IS SO ORDERED.**

Signed: December 31, 2019

Martin Reidinger
United States District Judge