1               UNITED STATES DISTRICT COURT

2           WESTERN DISTRICT OF NORTH CAROLINA

3                ASHEVILLE DIVISION

4

5

DAVID OPPENHEIMER,        )

6                         )

            Plaintiff,    )  1:18-cv-00272-MR

7                         )

    vs.                  )   **ORIGINAL**

8                         )

    JAMES SEAN GRIFFIN and   )

9   JENNIFER FOWLKES GRIFFIN,  )

                         )

10         Defendants.    )

    _____)

11

12

13            TRANSCRIPT OF MOTION HEARING

14

15   Proceedings in the matter of Cause: 17:101 Copyright

16   Infringement held before the Honorable Martin

17   Reidinger on the 4th day of December, 2019, in the

18   United States District Court, Western District of

19   North Carolina, 309 U.S. Courthouse Building, 100 Otis

20   Street, Courtroom 1, Asheville, North Carolina,

21   commencing at 2:00 p.m. and reported by Sarah G.

22   Pierce, Registered Professional Reporter and Notary

23   Public for the State of North Carolina.

24

25

```
 1                    APPEARANCE OF COUNSEL

 2

 3    On behalf of the Plaintiff:

 4              DANA A. LEJUNE, ESQ.
               LeJune Law Firm
 5              1225 North Loop West
               Suite 825
 6              Houston, Texas   77008
               713.942.9899
 7              dlejune@triallawyers.net

 8
      _____
 9

10                    INDEX TO EXAMINATIONS

11
      Examination of David Oppenheimer          Page No.
12

13    By Mr. LeJune                             21

14    By The Court                              26

15    _____

16

17

18

19

20

21

22

23

24

25
```

```
 1               P R O C E E D I N G S

 2

 3        THE COURT:  Good afternoon.  We have one

 4   matter that is on the calender for this afternoon.

 5   That is Oppenheimer versus Griffin which is on for

 6   Plaintiff's Motion for Entry of a Default

 7   Judgment.

 8        I see counsel who I do not recognize.  So, I

 9   will allow counsel to announce his appearance.

10        MR. LEJUNE:  Yes, Your Honor.  I'm Dana

11   LeJune.

12        THE COURT:  And who do you have with you?

13        MR. LEJUNE:  This is David Oppenheimer.

14        THE COURT:  Okay.  As a preliminary matter,

15   Mr. LeJune, have you provided any notice to the

16   Defendants with regard to today's hearing?

17        MR. LEJUNE:  No, Your Honor.  They refused

18   all communications and I've never gotten a

19   response from either of the Griffins.  The only

20   time I was able to communicate with them -- I did

21   get read receipts from some e-mails before the --

22   well, after the private process server was

23   unsuccessful and before the Court directed FedEx

24   mailing.

25        I did speak to Mr. Griffin on the phone one
```

```
 1   time.  He answered the call but only because I

 2   blocked my number, and as soon as I introduced

 3   myself he hung up.

 4        THE COURT:  Well, and I wanted to ask you

 5   about that because in what you filed here you

 6   included a copy of an e-mail that you sent,

 7   ostensibly, to both Defendants that refer to

 8   following up on a telephone conversation that you

 9   had with at least one of the Defendants.

10        MR. LEJUNE:  Correct.

11        THE COURT:  It read as though it was a lot

12   more of a communication than simply introducing

13   yourself and then Mr. Griffin hanging up because

14   you refer to responses that you got from him, the

15   indication that he had consulted with an attorney,

16   albeit a cousin or brother-in-law or something

17   like that.  So there seems to have been more

18   communication than simply somebody hanging up on

19   you.

20        MR. LEJUNE:  You are refreshing my

21   recollection, Your Honor, but I do know that he

22   terminated the call.

23        THE COURT:  Well, one of the reasons that I

24   asked about whether there was any notice to the

25   Defendants was the next thing that I want to
```

1   address is with regard to the service of process

2   issues.  And, obviously, if they were here this

3   would be a lot easier.  But what I don't want to

4   do, particularly with a Default Judgment that has

5   a little bit of complexity to it like this one

6   does -- it's not your ordinary promissory note

7   type of Default Judgment.

8       I don't want to go through all this and then

9   have somebody come back later and move to set

10  aside the entry of default because they didn't get

11  proper service of process.

12      In looking at the record it appears that the

13  Summons and Complaint was served actually on

14  someone by the last name of Amara, not anyone

15  named Griffin.  Do you know who this person is?

16      MR. LEJUNE:  I don't have personal knowledge

17  of who Amara is, but my understanding from the

18  private process server is that this is a 60-acre

19  high fenced compound with an electric gate.  And

20  that there are at least three structures on the

21  property.  One is a business; the other is a home.

22  I believe it's their homestead.  And the other is

23  some type of a storage facility.

24      And I believe -- my recollection is it's 60

25  plus acres, and that they -- their business

```
 1   appears to be some type of landscaping and dirt.
 2   They sell dirt and different types of dirt and
 3   rock.  And that there are numerous implements on
 4   the -- mechanical bulldozers and such on the
 5   property.
 6       And I believe that Amara is the receptionist
 7   at the business where the Griffins operate their
 8   business, which is also on the same 60 acres as
 9   their home.  At least the real property records
10   reflect that that is their homestead.
11       THE COURT:  Well, and you've recounted a lot
12   of what I have gleaned from the record because at
13   least on one of these persons from FedEx refers to
14   this Mr. or Ms. Amaro as receptionist, front desk,
15   which implies that it's a business.  But you've
16   served both Defendants at the same location signed
17   for by the same person.
18       Do you have knowledge that both Defendants
19   work at that business?  Because, for instance, if
20   you have Mr. Griffin working at the business and
21   his receptionist had signed for it, that wouldn't
22   be good service on Mrs. Griffin.
23       And it seems like that the service questions
24   are very ambiguous based on what I have in the
25   record here.  I don't want to piecemeal this.  If
```

1   you have a good explanation to sort of clear up

2   the issues for me, please let me know what it is.

3        MR. LEJUNE:  My understanding is that Mr. and

4   Mrs. -- according to the background reports that I

5   did on the two of them, one was Lexis People

6   Finder.  It's a pretty comprehensive thing, and

7   the other was a Transunion TLO comprehensive

8   report.

9        Those reflect that they both work at that

10  location for the family business which is, like I

11  said, some kind of dirt -- they sell dirt and

12  landscaping services.

13       THE COURT:  So you feel sufficiently

14  confident that either this Mr. or Ms. Amara had

15  the authority to receive service of process for

16  both Defendants at that location?

17       I don't want to go through this process and

18  you come back later and say I really ought to go

19  back and re-serve this thing.

20       MR. LEJUNE:  I've tried every way we could,

21  Your Honor.  My gut told me that we should have

22  posted the documents on the electric gate, but my

23  recollection is that the Court did not want to

24  order that kind of service, and I believe -- my

25  recollection is that the Court suggested the

1  FedEx, and I did the best I could.  We tried every

2  which way.  Your Honor, we spent almost $500 with

3  the process server trying to get service on these

4  folks, personal service.

5      And there are, by the way, there are a lot of

6  notes on the process server's statement.  I don't

7  believe I made that an exhibit.  If the Court

8  would like, I have marked it Plaintiff's Exhibit

9  Number 5, and I can provide that to the Court.

10     THE COURT:  Well, when you are referring to

11  the process server's statement, that's not the

12  statement from FedEx.  You are talking about when

13  there was a failed attempt to serve process.

14     MR. LEJUNE:  Correct.  But there is lots of

15  detail in here about why it failed, and that it's

16  a compound and so forth.

17     THE COURT:  Well, if that is your basis for

18  having confidence that you have good service, we

19  can go ahead and go forward.  I think you have a

20  prima facie record of good service.  I just, I

21  want to avoid two things.  I want to avoid you

22  coming back a week after I enter the Judgment and

23  saying, now that I've thought about it I want to

24  do it over.

25     And I want to avoid the situation of Mr. or

1   Mrs. Griffin coming in a week after I enter

2   Judgment making a motion to say, move to set aside

3   the entry of Default Judgment for failure of

4   service of process.

5        If you have sufficient confidence that I'm

6   going to avoid both of those problems we can go

7   ahead and proceed.

8        MR. LEJUNE:  I have sufficient confidence

9   that you will avoid the first one.  And I have

10  probable cause to believe that they will not lift

11  a finger to do anything about this Judgment.

12       THE COURT:  Well, then let's move on to my

13  next question because this is one that is of, I

14  guess, procedural significance.  That the Motion

15  For Entry of Default Judgment that you filed kind

16  of left me scratching my head.

17       For one thing -- and I don't want to make a

18  big deal out of this but our local rules require

19  that the motion be filed with the attachments that

20  support the motion, and then if you are going to

21  file a brief that that has to be docketed as a

22  separate document, and you put it all in one.

23       I guess the Clerk could have stricken the

24  document and made you do it over.  I could have

25  done that too, but we didn't.

```
 1        But what left me scratching my head was not
 2    the failure to follow the rules.  It was on the
 3    face of the document it says Jury Demanded.  But
 4    then the text of the document presents what is in
 5    essence the argument that I would have expected to
 6    be presented to the jury if you really wanted a
 7    jury.
 8        And then one of the attachments was an
 9    Affidavit from Mr. Oppenheimer which I would not
10    have expected to see as part of the filing if you
11    were expecting to present this to a jury.
12        So I set this for a hearing based on the
13    presumption that this reference to a jury demand
14    was simply an accident of copy and paste from the
15    complaint.
16        MR. LEJUNE:  Absolutely.
17        THE COURT:  Okay.  So you are here today to
18    present your Motion For Default Judgment for a
19    ruling from the Court as to the evaluation of the
20    judgment, entry of the judgment, determination of
21    the amount of damages, is that correct?
22        MR. LEJUNE:  Yes, Your Honor.  I would not
23    trouble eight people to do what the Court can do
24    in short order.
25        THE COURT:  Well, back years ago doing what
```

1  we used to call a Default and Inquiry -- in other
2  words, having a jury determine the amount of
3  damages on a Default Judgment was the common
4  practice, and I just thought maybe you were a
5  throwback to the way things were done years ago.
6       Let's move on to some of the substance here,
7  because after reading everything that you had
8  submitted I was unclear about what you were
9  wanting the Court to do.  The first question I
10 have has to do with the election that a Plaintiff
11 has with regard to copyright damages, about the
12 election between statutory damages and actual
13 damages under a 504B and C.
14      When I read what you had submitted I read
15 quite a bit like you were starting to present
16 evidence of actual damages, and then you shifted
17 over to arguing about an election for statutory
18 damages, and that could be interpreted two ways.
19      Either you are giving me this information
20 about actual damages so that I can better evaluate
21 where in the range the statutory damages should
22 be; or, that you have not yet made an election as
23 to whether you want actual damages or statutory
24 damages.
25      So let me ask the threshold question.  Which

1   of those is what you intend?

2       MR. LEJUNE:  The only reason that I put any

3   information in Mr. Oppenheimer's Affidavit and the

4   Motion on what he would have charged for a license

5   for this use, is to give the Court some idea of

6   just one element of the statutory damage range.

7       There are a lot of other elements, including

8   whether the acts were willful or non-willful, but

9   the only reason I included the amount that Mr.

10  Oppenheimer probably could and maybe should have

11  charged for this use the way they used it, and are

12  still using it, Your Honor -- and that's one thing

13  that I wanted to point out to the Court.  They

14  have not stopped.

15      THE COURT:  Well, that's why you are seeking

16  the injunctive relief as well as damages, correct?

17      MR. LEJUNE:  That is correct, Your Honor.

18      THE COURT:  With regard to that particular

19  portion of what you have submitted, this $9,000

20  plus, in reading the Affidavit and in reading what

21  you have submitted you didn't really give me any

22  basis for how that number was arrived upon.  It

23  seemed more or less like it was pulled out of the

24  air.

25      If there is a calculation that underlies it,

1   if it was not disclosed, why should that number

2   mean anything to me?  Or maybe should I ask, what

3   do you want that number to mean to the Court?

4        MR. LEJUNE:  Well, Your Honor, I think like I

5   said, it's just one factor that feeds into the

6   Court's determination or the trier of facts

7   determination as to what an appropriate statutory

8   damage award ought to be.  And if the Court wants

9   me to -- I can tell you that Mr. Oppenheimer uses

10  a computer program called Fotoquote and it's

11  F-o-t-o-q-u-o-t-e, and that program has -- I don't

12  know, thousands of variables that you plug in to

13  come up with a license fee that it gives some

14  basis for the license fee.

15       And some of those variables were discussed in

16  Mr. Oppenheimer's Affidavit which were that it is

17  a -- I mean, he's up in a plane, in an airplane,

18  and it's an open cockpit, or somewhat open.  And

19  he's hanging out of the upper part of the cockpit

20  to take --

21       THE COURT:  That's the part you gave me.  I

22  got that part.  But, again, it seems to me as

23  though it's a number that's pulled out of the air.

24  And let me go further with my question.

25       Here is one reason why that number did not

1   make a lot of sense to me, because the use to
2   which the Defendants apparently put this
3   photograph was as one photograph out of many on a
4   listing for a rental property, a vacation rental
5   property, to identify the location of the
6   property.
7         In fact, it's this photograph and then there
8   is a circle with an arrow, I believe, that says,
9   "Here is where the house is."
10        And it seems that that is a relatively
11  minimal use.  In other words, it is a very small
12  part of what use -- it's a very small part of what
13  the Defendants were doing in listing this
14  property.
15        As a result of that, it seems that for that
16  sort of use, no Defendant, no property listing
17  person would have any interest in paying a $9,700
18  license fee for a location photo.
19        Therefore, it seemed to me that this number
20  was pulled out of the air, or at least was
21  completely detached from the nature of the use to
22  which the Defendants put it.  And, therefore, it
23  became an entirely hypothetical number.  It was a
24  number based on the background of the
25  photographer, not the background of the use.

1      MR. LEJUNE:  May I respond?

2      THE COURT:  So tell me why that number should

3  mean anything to me.

4      MR. LEJUNE:  While the photograph is one

5  of -- I don't know, I didn't count them -- 15

6  different photographs, each of the photographs on

7  the website when one clicks on it takes up the

8  whole screen.  It opens up.  And it's not just a

9  location -- it's not just revealing the location

10  of their rental property in relation to the ski

11  mountain.  It is an advertising -- it shows the

12  slopes, and it shows the surrounding area, and it

13  is an enticement for people to rent a house at

14  that mountain.  And so it really is more than one

15  of several.  It is as important as any of them,

16  and probably as important as the interior photos

17  of the rental property.

18      With regard to why the number that Mr.

19  Oppenheimer derived from to put in there, I'm

20  happy to have -- if the Court wants to ask Mr.

21  Oppenheimer questions about that, or have me ask

22  him to better support that number as being just

23  one part of the statutory damage range, I'm happy

24  to have either one of those happen.

25      THE COURT:  Well, this isn't my proceeding.

1    I don't tell lawyers how to try their case.  If
2    you want to supplement your record in light of the
3    fact that it has been set for hearing I'll allow
4    you to put a witness on the stand if you want to.
5    I'm not telling you that I expect it.  I'm not
6    telling you that I want you to.
7         MR. LEJUNE:  Well, it sounds like I ought to,
8    so whenever the Court is ready for me to do that
9    I'm willing.
10        THE COURT:  Well, let me go through some of
11   these other questions because it may have an
12   effect on what you want to ask this witness,
13   because part of what you argue in your motion has
14   to do with this so-called scarcity factor.  That
15   because of the nature of what was involved in
16   taking this photograph that there is a certain
17   multiplier factor that could or that should come
18   into play.
19        But in terms of showing an aerial shot,
20   whether by photograph or other means, schematic,
21   et cetera, of something that's as popular as the
22   Beach Mountain Ski Resort, you can get on the
23   internet and this photograph is not at all unique.
24   There are several other photographs.  I notice
25   that some of them are also taken by Mr.

1    Oppenheimer.  But there are several other
2    photographs of the same set of ski slopes.
3        There is a lot of promotional material that
4    is published by the Beach Mountain Ski Resort that
5    show very much the same thing.  Under those
6    circumstances, how is there any scarcity?  The
7    cases that you cite regarding the scarcity factor
8    seem to be in a very different context of a
9    photograph that was of a particular thing that's
10   very hard to photograph, nobody else had managed
11   to photograph it.  It was no longer available to
12   photograph.  I can also see it like in the context
13   of, I think the ordinary context of a scarcity
14   factor is the Zapruder film.  That one image of
15   that one moment that nobody else got.  None of
16   this has any application here, does it?
17       MR. LEJUNE:  Well, Your Honor, I would say
18   this.  Having not deposed the Griffins, I believe
19   that they picked this image out of all of those
20   others that they could find on the internet
21   because it was the best.  Because it best
22   represented what they wanted to depict, to depict
23   to advertise their ski lodge.
24       And the fact that they didn't pick
25   photographs of, or a photograph of Beach Mountain

1   that's on the Beach Mountain website tells you
2   that this image is, I think better than the
3   others.
4        In terms of scarcity it does take some --
5   this image also was taken after a very heavy and
6   rare snow storm in that area.  I believe --
7        THE COURT:  Wait a minute.  In the area
8   around Boone you are calling it a rare snow storm?
9   They are not rare up there.  They have snow storms
10  every other week in that area.
11       MR. LEJUNE:  I think this one was a
12  particularly big storm.  I would have to look at
13  the Almanac.  But I would also point out to the
14  Court that the scarcity of a really good
15  photograph, aerial photograph of Beach Mountain
16  has to do with the equipment that's used, the
17  pilot that is flying, and the skill of the
18  photographer.
19       And so while those elements might not be
20  obvious to the Court or to a lay person just
21  casually looking at the picture, I think when
22  compared with the others that might be available
23  on the internet, either for license or not for
24  license, I think this image will stack up as a
25  rare shot.

1      THE COURT:  Are there any particular factors
2   that you can point to in this photograph that make
3   it such a rare shot, or that can cause you to look
4   at it as a basis for this one being the best
5   depiction of what is there compared to what else
6   is available?
7      MR. LEJUNE:  I think I would let Mr.
8   Oppenheimer speak to that.
9      THE COURT:  Okay.  Well, I would say it
10  sounds like you are going to be calling him, so
11  we'll go on to that here in just a few minutes.
12      I have several questions that are of a legal
13  nature, but I want to leave those until after I've
14  heard all the evidence.  But there is one thing
15  that may play into some evidence that you want to
16  present.  And it doesn't have to do with the 504
17  damages but it does have to do with the DMCA
18  damages, and that has to do with the number of
19  violations.  Because in going through the material
20  in the file it appeared to me that this photo was
21  posted by the Defendants.
22      It is alleged that it was posted by the
23  Defendants and, therefore, admitted by virtue of
24  their default, but it was posted to 10 websites,
25  not 12.

```
1          MR. LEJUNE:  I think we made a mistake.

2          THE COURT:  Okay.

3          MR. LEJUNE:  I figured that out just before

4    we started the hearing.  I think it's 11 and not

5    12.

6          THE COURT:  Okay.  I came up with 10, but

7    maybe that is something else that as a matter of

8    fact that you might want to clear up with the

9    evidence.

10          I have other questions that go to

11    interpretations of the law, but I at least wanted

12    to throw those things out before you put any

13    witness on the stand.  So if you are wanting to

14    call Mr. Oppenheimer, I would say now would be the

15    opportunity.

16          MR. LEJUNE:  Yes, Your Honor.  Do you want

17    him to go to the witness box or can he testify

18    from here?

19          THE COURT:  No.  I want him to come forward

20    to the Clerk's desk to be sworn and then to get up

21    on the witness stand.

22          MR. LEJUNE:  Thank you, Your Honor.

23          COURTROOM DEPUTY:  Would you put your left

24    hand on the Bible, please, and raise your hand.

25          Do you solemnly swear the testimony you are
```

```
1      about to give in the matter now before the Court

2      will be the truth, the whole truth, and nothing

3      but the truth, so help you God?

4          MR. OPPENHEIMER:  Yes, I do.

5          THE COURT:  You may proceed.

6          MR. LEJUNE:  Thank you, Your Honor.

7                         EXAMINATION

8  BY MR. LEJUNE:

9      Q.   Mr. Oppenheimer, did you review your

10 Declaration that's attached to the motion this

11 morning?

12     A.   Yes.

13     Q.   And I just want to be sure that, did you want

14 to make any corrections or changes to that

15 Declaration?

16     A.   No.

17     Q.   You heard Judge Reidinger.  He has some

18 issues.  He has some problems with the relative --

19 well, first of all, that he would like more

20 information from you about how you came up with the

21 9,000 plus dollars damage in license fees had you been

22 asked for a license fee.  Do you have anything to add

23 to that?

24     A.   Fotoquote has a coaching guide.  I don't have

25 the program in front of me and didn't review it before
```

1  coming here today.  But it suggests value-added

2  factors for a license, and some of those value-added

3  factors are risk, cost; whether or not it's an aerial

4  photo which is separate from risk which creates a

5  unique photo; whether the photo is used with a

6  watermark which prevents further infringements or

7  downloading infringements; and separate from a

8  watermark, whether or not the work is used with

9  attribution.  And those are all value-added factors,

10  which those I believe were relevant in this matter.

11          Also, Photoquote recommends licensing per

12  website, and so this wasn't 9,000 plus dollars for use

13  in one website, but it was use of nearly two dozen.

14  And Photoquote recommends a 10 percent discount after

15  the third website, I believe.  So it's not like

16  license it for one website and then, you know, pay 10

17  percent more for each additional website.  It's

18  significant to use across the board on every booking

19  agency and travel type website, you know, or quite a

20  few.

21      Q.    And did you use a length of time variable to

22  come up to input into the Photoquote?

23      A.    Photoquote also considers duration of use,

24  and I can't recall offhand if we had put one or two

25  years in at the time.

```
1        Q.   It was two.

2             THE COURT:  Mr. LeJune, let the witness

3        testify rather than you doing it.

4             MR. LEJUNE:  Yes, sir.  Yes, sir.

5   BY MR. LEJUNE:

6        Q.   Do you know if it was more than two years?

7        A.   I believe they are still using -- I looked

8   and they are using the photos on at least four

9   websites as of today.

10       Q.   And what are those websites?

11       A.   One is Travelocity.  I think Ebookers, I

12  believe Orbitz, and there is a fourth one.

13            MR. LEJUNE:  May I refresh his memory, Your

14       Honor?

15            THE COURT:  You may.

16  BY MR. LEJUNE:

17       Q.   I believe that's the fourth one.

18       A.   Expedia.

19       Q.   And did you print these off this morning?

20       A.   From my computer, from the internet, not from

21  anything else cached.

22       Q.   The Court brought up a point that I think is

23  interesting, and I wanted to see if you had any

24  information on that.  Judge Reidinger mentioned that

25  he suspected that no single property, home, or resort
```

1  owner would ever want to spend 9,000 plus dollars to

2  use a photograph like this one.  Have you ever

3  licensed any of your photographs for that kind of

4  money?

5      A.   I work a lot on selling prints.  That's a big

6  effort in my photography business, and while I do

7  license them for a single image, I don't think I have

8  received that kind of payment.  But I would if some of

9  the companies that have infringed had contacted me

10 initially.

11     Q.   Okay.  Did you look at any other images of

12 Beach Mountain, or have you ever looked at any other

13 images, aerial images of Beach Mountain?

14     A.   I tend not to look at other people's work at

15 stuff that I'm going to do.  You know, in looking at

16 my photos online after the fact I've seen similar

17 ones, but none come to mind.  I rarely look at other

18 people's works that are similar to mine.

19     Q.   The Judge had a question.  He was wondering

20 is there anything that makes this image special or

21 super special, in your mind, as opposed to others that

22 are on the web?

23     A.   I believe that I've honed in a skill and

24 technique to capture the Blue Ridge Mountains in a

25 unique way that very few people have tried, let alone

1    successfully undertaken.  The low altitude open canopy

2    aircraft without having glare and reflection and

3    distortion is kind of unique.  Not many people do open

4    air aerial photography.

5            This was after a particularly large snow

6    storm, and Boone does get a lot of snow and they do

7    make snow, so the slopes typically have snow

8    throughout the winter.  But in this picture the tree

9    tops and the surrounding mountain sides were covered

10   with snow which really added to the effect, you know,

11   because there is a lot of years where it's warm and

12   the trails will have snow but everything else doesn't,

13   and it doesn't look as much like a ski area.

14           And this photo was taken kind of to the

15   front.  And it's a tricky lighting situation because

16   it's a north facing mountain and so the sun is

17   backlit, and balancing out the exposure and also the

18   shutter so that there is not a blur makes -- there is

19   a lot of creative decisions that go into creating

20   works like this.

21           And when I'm up there I usually don't see

22   other planes flying around doing -- even in a peak day

23   of fall color this year I was up flying and I didn't

24   see anyone else for two hours.

25       Q.   So, I wanted to satisfy the Judge.  This

1  morning you and I discovered that there were not 12,

2  as argued in the Motion, different websites where we

3  know it was used.  Do you know how many there actually

4  were?

5      A.   I didn't realize the discrepancy until after

6  I had left the house and so I wasn't able to go

7  through my records and see if there was one that we

8  left out, and we did have 12 or we miscounted.

9      Q.   Well, it's A through K and I count 11.

10     A.   I've counted 11 on the document but for some

11  reason I had thought it was 12, so I'm not sure where

12  that discrepancy came in.  But I'm certain from

13  looking at the Declaration and reviewing the websites

14  that those are 11 distinct, different websites.

15          And we had a concern that some of these might

16  be unrelated listings but they showed the inside of

17  the same house, so it was unlikely that it was a

18  different property and a different person.

19     Q.   Okay.  I think that's all I have for you.

20                      EXAMINATION

21          THE COURT:  I want to follow-up on a couple

22     of things, Mr. Oppenheimer.  First on this issue

23     of the website, on the websites that are listed in

24     your Affidavit, of the 11 that are listed, A

25     through K, three of them are on the same website,

1  homeaway, with almost identical information.  Is
2  that three times that the photo is posted on the
3  same listing or are those different listings?
4      THE WITNESS:  Can I grab my Declaration?
5      THE COURT:  Mr. LeJune, if you would please
6  hand a copy to Mr. Oppenheimer.
7      MR. LEJUNE:  May it please the Court.
8      THE COURT:  I'm looking at paragraph 6 of
9  your Declaration where it has subparts H, I and J.
10     THE WITNESS:  I've made a mistake here, and
11 those are image URLs not actual listing URLs, and
12 I apologize to the Court for that mistake.
13     THE COURT:  So there are nine that you are
14 identifying, is that correct?
15     THE WITNESS:  I'm counting eight complete
16 different websites that displayed the work.  I
17 apologize again.
18     There is booking.com, vrbo.com,
19 rentbyowner.com, expedia.com, travelocity.com,
20 ebookers.ie, j2ski.com and homeaway.com, and I did
21 not catch that those were image URLs.
22     THE COURT:  The only thing I wanted to
23 follow-up on is this Photoquote software.  Have
24 you ever used that Photoquote software to arrive
25 upon an amount in an agreement for a license for

1   one of your photographs?

2       THE WITNESS:  I think I'm understanding you

3   correctly.  Have I used it in my business practice

4   to establish licenses?

5       THE COURT:  Well, my question is narrower

6   than that.  Have you ever used that software to

7   come up with a licensing value that was then

8   placed into a licensing agreement where the

9   licensee agreed to that figure?

10      THE WITNESS:  Not that I recall.  It's

11  usually negotiated, but I use that as a starting

12  point.

13      THE COURT:  Okay.  Thank you.

14      Mr. LeJune, do you have anything else that

15  you want to follow up with with Mr. Oppenheimer?

16      MR. LEJUNE:  I don't believe so, Your Honor.

17  Thank you.

18      THE COURT:  Thank you, Mr. Oppenheimer.  You

19  may return to your table.

20      Mr. LeJune, I mentioned earlier that I still

21  had some questions of a legal nature.  The first

22  one has to do with 504 damages.  Am I correct to

23  understand that the award of 504 damages, whether

24  actual damages or statutory damages, would be one

25  one award of damages as jointly and severally

1    against both Defendants?

2         MR. LEJUNE:  Correct.  One statutory damage

3    award is allowed per work infringed not -- unlike

4    the DMCA, it's not per iteration of infringement.

5         THE COURT:  And since it was eight work

6    infringed by Mr. and Mrs. Griffin acting in

7    concert, it would be one award and they would be

8    jointly and severely liable, and that's what you

9    are seeking, correct?

10         MR. LEJUNE:  Yes, sir.

11         THE COURT:  And I think you partially

12    answered this a moment ago with regard to the

13    DMCA, and that is even though it's the same image

14    that was posted to each of these different

15    websites, do I understand correctly that it is

16    your contention that each posting to a separate

17    website therefore constitutes a separate violation

18    entitling Mr. Oppenheimer to a separate award of

19    damages under the DMCA?

20         MR. LEJUNE:  Yes, sir, that is I believe a

21    correct statement of the law in every circuit.

22    And so that the removal of the digital copyright

23    management information is probably more important

24    and more damaging to Mr. Oppenheimer than had they

25    cropped out his circle C or left it completely

1  intact.

2      I probably should have asked him this but my

3  understanding, Your Honor, is that the copyright

4  management information he puts in the digital

5  images that has such things as his name, his

6  mailing address, his website address, his e-mail

7  address, it has a lot of information there so that

8  he doesn't lose control of his photograph.

9      We've had -- with Mr. Oppenheimer, in fact,

10  we've had cases where downstream infringers all

11  claimed innocent infringement because the works

12  had no indication that they were protected by

13  copyright because his information was cropped out

14  and removed from the digital CMI.

15      And it's especially true of realtors.

16  Realtors tend to like to use these photographs

17  that they get off the internet to sell property,

18  and they will remove everything and crop it down

19  so that -- and it goes into the MLS and it just

20  goes wild because -- and some of the realtors

21  don't even know how to call it back or get it off

22  of there.  And so that's a real problem with the

23  internet and how's easy is to right click and

24  take.

25      THE COURT:  It seems like realtors would know

1   very easily how to get it off of there simply by
2   selling the property and making it unavailable.
3       MR. LEJUNE:  Right.  I have had one case
4   where Carolina MLS is a separate entity from the
5   national MLS, and the lawyer that was defending
6   the infringer simply could not get them to take it
7   down.  It went on for months, and I don't know why
8   that is, but the realtors themselves could not get
9   it down with key strokes.
10      THE COURT:  With regard to there being a
11  separate award of damages under the DMCA for each
12  separate posting or posting to a separate website,
13  would you argue that those amounts should be the
14  same, or is there like a decreasing sanction?
15      I don't want to say a decreasing value
16  because that's not what DMCA is trying to measure.
17  But is there a decreasing sanction as there are
18  more violations?
19      MR. LEJUNE:  I haven't thought about it, Your
20  Honor.  I can't really comment on that.  I would
21  suspect that they all should be the same because
22  it is a penalty for the act of removal and
23  distribution, and I just don't see what the
24  argument would be for reduction.
25      If we knew in time when the first one got on

1   VRBO or whatever, and each one successively in
2   terms of the chronology, if that were possible,
3   perhaps the latest one perhaps should be a lesser
4   penalty.  But I don't know how to determine the
5   chronology of postings on these websites.
6        Sometimes the internet archive that was
7   called the Wayback Machine, one can determine that
8   but it doesn't -- it's not very accurate.  It
9   doesn't crawl every website every day, and so you
10  might be able to pin it down to a 30 or 60-day
11  period but you might not.  Probably would not be
12  able to for every one.
13       THE COURT:  Okay.  I think you have covered
14  everything that I wanted to ask you, and of course
15  asking questions was my whole reason for setting
16  this for hearing.  But you have covered everything
17  that I had in my notes that I wanted to cover so
18  if you have something else that you want to add
19  this is your opportunity.
20       MR. LEJUNE:  Your Honor, the only thing I
21  would say is that in almost 36 years of practice,
22  and I'm a litigation practice, I have never had so
23  much trouble getting a Defendant served, even
24  after communicating with them that, you know, we
25  are not going to just forget about it.  We are

1  going to go forward with a lawsuit and we are

2  going to get a Judgment.

3      I just never have spent this much time

4  getting to the point where we are now.  And I have

5  never tried to collect a Judgment in Florida, but

6  I understand it's more a debtor state than even

7  Texas is, and so --

8      THE COURT:  Under the circumstances here

9  that's not your problem because you have the

10  property in North Carolina to go after.

11      MR. LEJUNE:  One never knows what the

12  mortgage -- how mortgaged up the property is.  And

13  I've tried to figure that out and haven't been

14  able to yet.  And I suspect I will do post

15  Judgment discovery, and maybe subpoena the lender,

16  but I understand Florida is a difficult place to

17  collect a Judgment.

18      And this property as far as I can tell is the

19  only property that this couple owns in the State

20  of North Carolina.

21      So thank you for taking your time to hear us

22  out, Your Honor, and I have a new respect for

23  Judge Reidinger.  I didn't expect to argue or

24  answer any questions.  Usually it's just you file

25  the documents and you get a Judgment.  So, I

```
 1   appreciate the Court giving us this time.
 2        THE COURT:  If I have a reputation at all it
 3   is the reputation of always having a hundred
 4   questions, so that's what you got today.
 5        MR. LEJUNE:  I know that now.  Thank you,
 6   Your Honor.
 7        THE COURT:  Thank you for your presentation.
 8   I appreciate all the time that you've put into
 9   this.
10        Marshall, that's the last item that we have
11   on the calendar for today, so if you could recess
12   us until further call.
13        COURTROOM MARSHALL:  All rise, please.
14        This Honorable Court stands in recess until
15   further call.  God save this United States and
16   this Honorable Court.
17        (Proceedings concluded at 3:00 p.m.)
18
19
20
21
22
23
24
25
```

```
1                  C E R T I F I C A T E

2    NORTH CAROLINA

3    HENDERSON COUNTY:

4

5            I, Sarah G. Pierce, RPR, and Notary Public in

6    and for the State of North Carolina, do hereby certify

7    that on December 4, 2019, that the foregoing

8    Proceedings was taken by me in stenotype and

9    thereafter reduced to typewritten form by me; that the

10   foregoing is a true record of the Proceedings and

11   testimony given by the witness.

12           I further certify that I am not of kin or

13   associated with any of the parties to this action or

14   their counsel and that I am not interested in the

15   events thereof.

16           This the 10th day of March, 2020.

17

18                   _____

19                   Sarah G. Pierce, RPR
                     Notary Public Number 201532200163
20                   My Commission Expires
                     November 16, 2020.
21

22

23

24

25
```

**$**

**$500**  8:2

**$9,000**  12:19

**$9,700**  14:17

**1**

**10**  19:24
  20:6
  22:14,16

**11**  20:4
  26:9,10,
  14,24

**12**  19:25
  20:5 26:1,
  8,11

**15**  15:5

**3**

**30**  32:10

**36**  32:21

**3:00**  34:17

**5**

**5**  8:9

**504**  19:16
  28:22,23

**504B**  11:13

**6**

**6**  27:8

**60**  5:24 6:8

**60-acre**  5:18

**60-day**  32:10

**9**

**9,000**  21:21
  22:12 24:1

**A**

**Absolutely**
  10:16

**accident**
  10:14

**accurate**
  32:8

**acres**  5:25
  6:8

**act**  31:22

**acting**  29:6

**acts**  12:8

**actual**
  11:12,16,
  20,23
  27:11
  28:24

**add**  21:22
  32:18

**added**  25:10

**additional**
  22:17

**address**  5:1
  30:6,7

**admitted**
  19:23

**advertise**
  17:23

**advertising**
  15:11

**aerial**  16:19
  18:15 22:3
  24:13 25:4

**Affidavit**
  10:9 12:3,
  20 13:16
  26:24

**afternoon**
  3:3,4

**agency**  22:19

**agreed**  28:9

**agreement**
  27:25 28:8

**ahead**  8:19
  9:7

**air**  12:24
  13:23
  14:20 25:4

**aircraft**
  25:2

**airplane**
  13:17

**albeit**  4:16

**alleged**
  19:22

**allowed**  29:3

**Almanac**
  18:13

**altitude**
  25:1

**Amara**  5:14,
  17 6:6
  7:14

**Amaro**  6:14

**ambiguous**
  6:24

**amount**  10:21
  11:2 12:9
  27:25

**amounts**
  31:13

**announce**  3:9

**apologize**
  27:12,17

**apparently**
  14:2

**appearance**
  3:9

**appeared**
  19:20

**appears**  5:12
  6:1

**application**
  17:16

**archive**  32:6

**area**  15:12
  18:6,7,10
  25:13

argue  16:13
  31:13
  33:23

argued  26:2

arguing
  11:17

argument
  10:5 31:24

arrive  27:24

arrived
  12:22

arrow  14:8

attached
  21:10

attachments
  9:19 10:8

attempt  8:13

attorney
  4:15

attribution
  22:9

authority
  7:15

avoid  8:21,
  25 9:6,9

award  13:8
  28:23,25
  29:3,7,18
  31:11

        B

back  5:9

7:18,19
  8:22 10:25
  30:21

background
  7:4 14:24,
  25

backlit
  25:17

balancing
  25:17

based  6:24
  10:12
  14:24

basis  8:17
  12:22
  13:14 19:4

Beach  16:22
  17:4,25
  18:1,15
  24:12,13

Bible  20:24

big  9:18
  18:12 24:5

bit  5:5
  11:15

blocked  4:2

Blue  24:24

blur  25:18

board  22:18

booking
  22:18

booking.com
  27:18

Boone  18:8
  25:6

box  20:17

brother-in-law
  4:16

brought
  23:22

bulldozers
  6:4

business
  5:21,25
  6:7,8,15,
  19,20 7:10
  24:6 28:3

        C

cached  23:21

calculation
  12:25

calendar
  34:11

calender  3:4

call  4:1,22
  11:1 20:14
  30:21
  34:12,15

called  13:10
  32:7

calling  18:8
  19:10

canopy  25:1

capture

24:24

Carolina
  31:4
  33:10,20

case  16:1
  31:3

cases  17:7
  30:10

casually
  18:21

catch  27:21

cetera  16:21

charged
  12:4,11

chronology
  32:2,5

circle  14:8
  29:25

circuit
  29:21

circumstances
  17:6 33:8

cite  17:7

claimed
  30:11

clear  7:1
  20:8

Clerk  9:23

Clerk's
  20:20

click  30:23

clicks 15:7

CMI 30:14

coaching 21:24

cockpit 13:18,19

collect 33:5,17

color 25:23

comment 31:20

common 11:3

communicate 3:20

communicating 32:24

communication 4:12,18

communications 3:18

companies 24:9

compared 18:22 19:5

complaint 5:13 10:15

complete 27:15

completely 14:21 29:25

complexity 5:5

compound 5:19 8:16

comprehensive 7:6,7

computer 13:10 23:20

concern 26:15

concert 29:7

concluded 34:17

confidence 8:18 9:5,8

confident 7:14

considers 22:23

constitutes 29:17

consulted 4:15

contacted 24:9

contention 29:16

context 17:8,12,13

control 30:8

conversation 4:8

copy 4:6 10:14 27:6

copyright 11:11 29:22 30:3,13

correct 4:10 8:14 10:21 12:16,17 27:14 28:22 29:2,9,21

corrections 21:14

correctly 28:3 29:15

cost 22:3

counsel 3:8, 9

count 15:5 26:9

counted 26:10

counting 27:15

couple 26:21 33:19

Court 3:3, 12,14,23 4:4,11,23 6:11 7:13, 23,25 8:7, 9,10,17 9:12

10:17,19, 23,25 11:9 12:5,13, 15,18 13:3,8,21 15:2,20,25 16:8,10 18:7,14,20 19:1,9 20:2,6,19 21:1,5 23:2,15,22 26:21 27:5,7,8, 12,13,22 28:5,13,18 29:5,11 30:25 31:10 32:13 33:8 34:1,2,7, 14,16

Court's 13:6

COURTROOM 20:23 34:13

cousin 4:16

cover 32:17

covered 25:9 32:13,16

crawl 32:9

creates 22:4

creating 25:19

creative

25:19

**crop** 30:18

**cropped**
29:25
30:13

---
**D**
---

**damage** 12:6
13:8 15:23
21:21 29:2

**damages**
10:21
11:3,11,
12,13,16,
18,20,21,
23,24
12:16
19:17,18
28:22,23,
24,25
29:19
31:11

**damaging**
29:24

**Dana** 3:10

**David** 3:13

**day** 25:22
32:9

**deal** 9:18

**debtor** 33:6

**decisions**
25:19

**Declaration**

21:10,15
26:13
27:4,9

**decreasing**
31:14,15,
17

**default** 3:6
5:4,7,10
9:3,15
10:18
11:1,3
19:24

**Defendant**
14:16
32:23

**Defendants**
3:16 4:7,
9,25 6:16,
18 7:16
14:2,13,22
19:21,23
29:1

**defending**
31:5

**demand** 10:13

**Demanded**
10:3

**depict** 17:22

**depiction**
19:5

**deposed**
17:18

**DEPUTY** 20:23

**derived**
15:19

**desk** 6:14
20:20

**detached**
14:21

**detail** 8:15

**determination**
10:20
13:6,7

**determine**
11:2 32:4,
7

**difficult**
33:16

**digital**
29:22
30:4,14

**directed**
3:23

**dirt** 6:1,2
7:11

**disclosed**
13:1

**discount**
22:14

**discovered**
26:1

**discovery**
33:15

**discrepancy**
26:5,12

**discussed**
13:15

**displayed**
27:16

**distinct**
26:14

**distortion**
25:3

**distribution**
31:23

**DMCA** 19:17
29:4,13,19
31:11,16

**docketed**
9:21

**document**
9:22,24
10:3,4
26:10

**documents**
7:22 33:25

**dollars**
21:21
22:12 24:1

**downloading**
22:7

**downstream**
30:10

**dozen** 22:13

**duration**
22:23

**E**

**e-mail** 4:6 30:6

**e-mails** 3:21

**earlier** 28:20

**easier** 5:3

**easily** 31:1

**easy** 30:23

**Ebookers** 23:11

**ebookers.ie** 27:20

**effect** 16:12 25:10

**effort** 24:6

**election** 11:10,12, 17,22

**electric** 5:19 7:22

**element** 12:6

**elements** 12:7 18:19

**enter** 8:22 9:1

**enticement** 15:13

**entitling** 29:18

**entity** 31:4

**entry** 3:6 5:10 9:3, 15 10:20

**equipment** 18:16

**essence** 10:5

**establish** 28:4

**evaluate** 11:20

**evaluation** 10:19

**evidence** 11:16 19:14,15 20:9

**EXAMINATION** 21:7 26:20

**exhibit** 8:7, 8

**expect** 16:5 33:23

**expected** 10:5,10

**expecting** 10:11

**Expedia** 23:18

**expedia.com** 27:19

**explanation** 7:1

**exposure** 25:17

**F**

**F-O-T-O-Q-U-O-T-E** 13:11

**face** 10:3

**facie** 8:20

**facility** 5:23

**facing** 25:16

**fact** 14:7 16:3 17:24 20:8 24:16 30:9

**factor** 13:5 16:14,17 17:7,14

**factors** 19:1 22:2,3,9

**facts** 13:6

**failed** 8:13, 15

**failure** 9:3 10:2

**fall** 25:23

**family** 7:10

**Fedex** 3:23 6:13 8:1, 12

**fee** 13:13, 14 14:18

**21:22**

**feeds** 13:5

**feel** 7:13

**fees** 21:21

**fenced** 5:19

**figure** 28:9 33:13

**figured** 20:3

**file** 9:21 19:20 33:24

**filed** 4:5 9:15,19

**filing** 10:10

**film** 17:14

**find** 17:20

**Finder** 7:6

**finger** 9:11

**Florida** 33:5,16

**flying** 18:17 25:22,23

**folks** 8:4

**follow** 10:2 28:15

**follow-up** 26:21 27:23

**forget** 32:25

**forward** 8:19 20:19 33:1

**Fotoquote**
  13:10
  21:24

**fourth**
  23:12,17

**front**  6:14
  21:25
  25:15

---

**G**

**gate**  5:19
  7:22

**gave**  13:21

**give**  12:5,
  21 21:1

**giving**  11:19
  34:1

**glare**  25:2

**gleaned**  6:12

**God**  21:3
  34:15

**good**  3:3
  6:22 7:1
  8:18,20
  18:14

**grab**  27:4

**Griffin**  3:5,
  25 4:13
  5:15 6:20,
  22 9:1
  29:6

**Griffins**
  3:19 6:7

17:18

**guess**  9:14,
  23

**guide**  21:24

**gut**  7:21

---

**H**

**hand**  20:24
  27:6

**hanging**
  4:13,18
  13:19

**happen**  15:24

**happy**  15:20,
  23

**hard**  17:10

**head**  9:16
  10:1

**hear**  33:21

**heard**  19:14
  21:17

**hearing**  3:16
  10:12 16:3
  20:4 32:16

**heavy**  18:5

**high**  5:19

**home**  5:21
  6:9 23:25

**homeaway**
  27:1

**homeaway.com**

27:20

**homestead**
  5:22 6:10

**honed**  24:23

**Honor**  3:10,
  17 4:21
  7:21 8:2
  10:22
  12:12,17
  13:4 17:17
  20:16,22
  21:6 23:14
  28:16 30:3
  31:20
  32:20
  33:22 34:6

**Honorable**
  34:14,16

**hours**  25:24

**house**  14:9
  15:13
  26:6,17

**how's**  30:23

**hundred**  34:3

**hung**  4:3

**hypothetical**
  14:23

---

**I**

**idea**  12:5

**identical**
  27:1

**identify**

14:5

**identifying**
  27:14

**image**  17:14,
  19 18:2,5,
  24 24:7,20
  27:11,21
  29:13

**images**
  24:11,13
  30:5

**implements**
  6:3

**implies**  6:15

**important**
  15:15,16
  29:23

**included**  4:6
  12:9

**including**
  12:7

**indication**
  4:15 30:12

**information**
  11:19 12:3
  21:20
  23:24 27:1
  29:23
  30:4,7,13

**infringed**
  24:9 29:3,
  6

**infringement**
  29:4 30:11

infringements 22:6,7

infringer 31:6

infringers 30:10

initially 24:10

injunctive 12:16

innocent 30:11

input 22:22

Inquiry 11:1

inside 26:16

instance 6:19

intact 30:1

intend 12:1

interest 14:17

interesting 23:23

interior 15:16

internet 16:23 17:20 18:23 23:20 30:17,23 32:6

interpretations 20:11

interpreted 11:18

introduced 4:2

introducing 4:12

involved 16:15

issue 26:22

issues 5:2 7:2 21:18

item 34:10

iteration 29:4

**J**

j2ski.com 27:20

jointly 28:25 29:8

Judge 21:17 23:24 24:19 25:25 33:23

judgment 3:7 5:4,7 8:22 9:2,3,11, 15 10:18, 20 11:3 33:2,5,15,

17,25

jury 10:3, 6,7,11,13 11:2

**K**

key 31:9

kind 7:11, 24 9:15 24:3,8 25:3,14

knew 31:25

knowledge 5:16 6:18

**L**

landscaping 6:1 7:12

large 25:5

latest 32:3

law 20:11 29:21

lawsuit 33:1

lawyer 31:5

lawyers 16:1

lay 18:20

leave 19:13

left 9:16 10:1 20:23 26:6,8 29:25

legal 19:12 28:21

Lejune 3:10, 11,13,15, 17 4:10,20 5:16 7:3, 20 8:14 9:8 10:16, 22 12:2,17 13:4 15:1, 4 16:7 17:17 18:11 19:7 20:1,3,16, 22 21:6,8 23:2,4,5, 13,16 27:5,7 28:14,16, 20 29:2, 10,20 31:3,19 32:20 33:11 34:5

lender 33:15

length 22:21

lesser 32:3

let alone 24:25

Lexis 7:5

liable 29:8

license 12:4 13:13,14 14:18 18:23,24

21:21,22
22:2,16
24:7 27:25

**licensed**
24:3

**licensee**
28:9

**licenses**
28:4

**licensing**
22:11
28:7,8

**lift** 9:10

**light** 16:2

**lighting**
25:15

**listed**
26:23,24

**listing**
14:4,13,16
27:3,11

**listings**
26:16 27:3

**litigation**
32:22

**local** 9:18

**location**
6:16 7:10,
16 14:5,18
15:9

**lodge** 17:23

**longer** 17:11

**looked** 23:7
24:12

**lose** 30:8

**lot** 4:11
5:3 6:11
8:5 12:7
14:1 17:3
24:5 25:6,
11,19 30:7

**lots** 8:14

**low** 25:1

──────────

**M**
──────────

**Machine** 32:7

**made** 8:7
9:24 11:22
20:1 27:10

**mailing** 3:24
30:6

**make** 9:17
14:1 19:2
21:14 25:7

**makes** 24:20
25:18

**making** 9:2
31:2

**managed**
17:10

**management**
29:23 30:4

**marked** 8:8

**Marshall**

34:10,13

**material**
17:3 19:19

**matter** 3:4,
14 20:7
21:1 22:10

**means** 16:20

**measure**
31:16

**mechanical**
6:4

**memory** 23:13

**mentioned**
23:24
28:20

**mind** 24:17,
21

**mine** 24:18

**minimal**
14:11

**minute** 18:7

**minutes**
19:11

**miscounted**
26:8

**mistake** 20:1
27:10,12

**MLS** 30:19
31:4,5

**moment** 17:15
29:12

**money** 24:4

**months** 31:7

**morning**
21:11
23:19 26:1

**mortgage**
33:12

**mortgaged**
33:12

**motion** 3:6
9:2,14,19,
20 10:18
12:4 16:13
21:10 26:2

**mountain**
15:11,14
16:22
17:4,25
18:1,15
24:12,13
25:9,16

**Mountains**
24:24

**move** 5:9
9:2,12
11:6

**multiplier**
16:17

──────────

**N**
──────────

**named** 5:15

**narrower**
28:5

**national**
31:5

nature 14:21
  16:15
  19:13
  28:21

negotiated
  28:11

non-willful
  12:8

north 25:16
  33:10,20

note 5:6

notes 8:6
  32:17

notice 3:15
  4:24 16:24

number 4:2
  8:9 12:22
  13:1,3,23,
  25 14:19,
  23,24
  15:2,18,22
  19:18

numerous 6:3

―――――――
      O
―――――――

obvious
  18:20

offhand
  22:24

online 24:16

open 13:18
  25:1,3

opens 15:8

operate 6:7

Oppenheimer
  3:5,13
  10:9 12:10
  13:9
  15:19,21
  17:1 19:8
  20:14
  21:4,9
  26:22 27:6
  28:15,18
  29:18,24
  30:9

Oppenheimer's
  12:3 13:16

opportunity
  20:15
  32:19

opposed
  24:21

Orbitz 23:12

order 7:24
  10:24

ordinary 5:6
  17:13

ostensibly
  4:7

owner 24:1

owns 33:19

―――――――
      P
―――――――

p.m. 34:17

paragraph

27:8

part 10:10
  13:19,21,
  22 14:12
  15:23
  16:13

partially
  29:11

paste 10:14

pay 22:16

paying 14:17

payment 24:8

peak 25:22

penalty
  31:22 32:4

people 7:5
  10:23
  15:13
  24:25 25:3

people's
  24:14,18

percent
  22:14,17

period 32:11

person 5:15
  6:17 14:17
  18:20
  26:18

personal
  5:16 8:4

persons 6:13

phone 3:25

photo 14:18
  19:20
  22:4,5
  25:14 27:2

photograph
  14:3,7
  15:4
  16:16,20,
  23 17:9,
  10,11,12,
  25 18:15
  19:2 24:2
  30:8

photographer
  14:25
  18:18

photographs
  15:6 16:24
  17:2,25
  24:3 28:1
  30:16

photography
  24:6 25:4

Photoquote
  22:11,14,
  22,23
  27:23,24

photos 15:16
  23:8 24:16

pick 17:24

picked 17:19

picture
  18:21 25:8

piecemeal

6:25

pilot 18:17

pin 32:10

place 33:16

Plaintiff
11:10

Plaintiff's
3:6 8:8

plane 13:17

planes 25:22

play 16:18
19:15

plug 13:12

point 12:13
18:13 19:2
23:22
28:12 33:4

popular
16:21

portion
12:19

post 33:14

posted 7:22
19:21,22,
24 27:2
29:14

posting
29:16
31:12

postings
32:5

practice

11:4 28:3
32:21,22

preliminary
3:14

present
10:11,18
11:15
19:16

presentation
34:7

presented
10:6

presents
10:4

presumption
10:13

pretty 7:6

prevents
22:6

prima 8:20

print 23:19

prints 24:5

private 3:22
5:18

probable
9:10

problem
30:22 33:9

problems 9:6
21:18

procedural
9:14

proceed 9:7
21:5

proceeding
15:25

proceedings
34:17

process 3:22
5:1,11,18
7:15,17
8:3,6,11,
13 9:4

program
13:10,11
21:25

promissory
5:6

promotional
17:3

proper 5:11

property
5:21 6:5,9
14:4,5,6,
14,16
15:10,17
23:25
26:18
30:17 31:2
33:10,12,
18,19

protected
30:12

provide 8:9

provided
3:15

published
17:4

pulled 12:23
13:23
14:20

put 9:22
12:2 14:2,
22 15:19
16:4
20:12,23
22:24 34:8

puts 30:4

———————

Q

question
9:13 11:9,
25 13:24
24:19 28:5

questions
6:23 15:21
16:11
19:12
20:10
28:21
32:15
33:24 34:4

———————

R

raise 20:24

range 11:21
12:6 15:23

rare 18:6,
8,9,25
19:3

**rarely**  24:17

**re-serve**
  7:19

**read**  3:21
  4:11 11:14

**reading**  11:7
  12:20

**ready**  16:8

**real**  6:9
  30:22

**realize**  26:5

**realtors**
  30:15,16,
  20,25 31:8

**reason**  12:2,
  9 13:25
  26:11
  32:15

**reasons**  4:23

**recall**  22:24
  28:10

**receipts**
  3:21

**receive**  7:15

**received**
  24:8

**receptionist**
  6:6,14,21

**recess**
  34:11,14

**recognize**
  3:8

**recollection**
  4:21 5:24
  7:23,25

**recommends**
  22:11,14

**record**  5:12
  6:12,25
  8:20 16:2

**records**  6:9
  26:7

**recounted**
  6:11

**reduction**
  31:24

**refer**  4:7,14

**reference**
  10:13

**referring**
  8:10

**refers**  6:13

**reflect**  6:10
  7:9

**reflection**
  25:2

**refresh**
  23:13

**refreshing**
  4:20

**refused**  3:17

**regard**  3:16
  5:1 11:11
  12:18
  15:18

**29:12
  31:10**

**Reidinger**
  21:17
  23:24
  33:23

**relation**
  15:10

**relative**
  21:18

**relevant**
  22:10

**relief**  12:16

**removal**
  29:22
  31:22

**remove**  30:18

**removed**
  30:14

**rent**  15:13

**rental**  14:4
  15:10,17

**rentbyowner.
com**  27:19

**report**  7:8

**reports**  7:4

**represented**
  17:22

**reputation**
  34:2,3

**require**  9:18

**resort**  16:22

**17:4 23:25**

**respect**
  33:22

**respond**  15:1

**response**
  3:19

**responses**
  4:14

**result**  14:15

**return**  28:19

**revealing**
  15:9

**review**  21:9,
  25

**reviewing**
  26:13

**Ridge**  24:24

**rise**  34:13

**risk**  22:3,4

**rock**  6:3

**rules**  9:18
  10:2

**ruling**  10:19

─────────
      **S**
─────────

**sanction**
  31:14,17

**satisfy**
  25:25

**save**  34:15

**scarcity**
  16:14
  17:6,7,13
  18:4,14

**schematic**
  16:20

**scratching**
  9:16 10:1

**screen**  15:8

**seeking**
  12:15 29:9

**sell**  6:2
  7:11 30:17

**selling**  24:5
  31:2

**sense**  14:1

**separate**
  9:22 22:4,
  7 29:16,
  17,18
  31:4,11,12

**serve**  8:13

**served**  5:13
  6:16 32:23

**server**  3:22
  5:18 8:3

**server's**
  8:6,11

**service**  5:1,
  11 6:22,23
  7:15,24
  8:3,4,18,
  20 9:4

**services**
  7:12

**set**  5:9 9:2
  10:12 16:3
  17:2

**setting**
  32:15

**severally**
  28:25

**severely**
  29:8

**shifted**
  11:16

**short**  10:24

**shot**  16:19
  18:25 19:3

**show**  17:5

**showed**  26:16

**showing**
  16:19

**shows**  15:11,
  12

**shutter**
  25:18

**sides**  25:9

**signed**  6:16,
  21

**significance**
  9:14

**significant**
  22:18

**similar**

  24:16,18

**simply**  4:12,
  18 10:14
  31:1,6

**single**  23:25
  24:7

**sir**  23:4
  29:10,20

**situation**
  8:25 25:15

**ski**  15:10
  16:22
  17:2,4,23
  25:13

**skill**  18:17
  24:23

**slopes**  15:12
  17:2 25:7

**small**  14:11,
  12

**snow**  18:6,
  8,9 25:5,
  6,7,10,12

**so-called**
  16:14

**software**
  27:23,24
  28:6

**solemnly**
  20:25

**sort**  7:1
  14:16

**sounds**  16:7

  19:10

**speak**  3:25
  19:8

**special**
  24:20,21

**spend**  24:1

**spent**  8:2
  33:3

**stack**  18:24

**stand**  16:4
  20:13,21

**stands**  34:14

**started**  20:4

**starting**
  11:15
  28:11

**state**  33:6,
  19

**statement**
  8:6,11,12
  29:21

**States**  34:15

**statutory**
  11:12,17,
  21,23 12:6
  13:7 15:23
  28:24 29:2

**stopped**
  12:14

**storage**  5:23

**storm**  18:6,
  8,12 25:6

storms 18:9

stricken
9:23

strokes 31:9

structures
5:20

stuff 24:15

submitted
11:8,14
12:19,21

subparts
27:9

subpoena
33:15

substance
11:6

successfully
25:1

successively
32:1

sufficient
9:5,8

sufficiently
7:13

suggested
7:25

suggests
22:1

Summons 5:13

sun 25:16

super 24:21

supplement
16:2

support 9:20
15:22

surrounding
15:12 25:9

suspect
31:21
33:14

suspected
23:25

swear 20:25

sworn 20:20

T

table 28:19

takes 15:7

taking 16:16
33:21

talking 8:12

technique
24:24

telephone
4:8

telling
16:5,6

tells 18:1

tend 24:14
30:16

terminated
4:22

terms 16:19
18:4 32:2

testify
20:17 23:3

testimony
20:25

Texas 33:7

text 10:4

thing 4:25
7:6,19
9:17 12:12
17:5,9
19:14
27:22
32:20

things 8:21
11:5 20:12
26:22 30:5

thought 8:23
11:4 26:11
31:19

thousands
13:12

threshold
11:25

throw 20:12

throwback
11:5

time 3:20
4:1 22:21,
25 31:25
33:3,21
34:1,8

times 27:2

TLO 7:7

today 10:17
22:1 23:9
34:4,11

today's 3:16

told 7:21

tops 25:9

trails 25:12

Transunion
7:7

travel 22:19

Travelocity
23:11

travelocity.
com 27:19

tree 25:8

tricky 25:15

trier 13:6

trouble
10:23
32:23

true 30:15

truth 21:2,3

type 5:7,23
6:1 22:19

types 6:2

typically
25:7

**U**

**unavailable**
 31:2

**unclear** 11:8

**underlies**
 12:25

**understand**
 28:23
 29:15
 33:6,16

**understanding**
 5:17 7:3
 28:2 30:3

**undertaken**
 25:1

**unique** 16:23
 22:5 24:25
 25:3

**United** 34:15

**unlike** 29:3

**unrelated**
 26:16

**unsuccessful**
 3:23

**upper** 13:19

**URLS** 27:11,
 21

**V**

**vacation**
 14:4

**value-added**
 22:1,2,9

**variable**
 22:21

**variables**
 13:12,15

**versus** 3:5

**violation**
 29:17

**violations**
 19:19
 31:18

**virtue** 19:23

**VRBO** 32:1

**vrbo.com**
 27:18

**W**

**Wait** 18:7

**wanted** 4:4
 10:6 12:13
 17:22
 20:11
 23:23
 25:25
 27:22
 32:14,17

**wanting** 11:9
 20:13

**warm** 25:11

**watermark**
 22:6,8

**Wayback** 32:7

**ways** 11:18

**web** 24:22

**website** 15:7
 18:1
 22:12,13,
 15,16,17,
 19 26:23,
 25 29:17
 30:6 31:12
 32:9

**websites**
 19:24
 23:9,10
 26:2,13,
 14,23
 27:16
 29:15 32:5

**week** 8:22
 9:1 18:10

**wild** 30:20

**willful** 12:8

**winter** 25:8

**wondering**
 24:19

**words** 11:2
 14:11

**work** 6:19
 7:9 22:8
 24:5,14
 27:16
 29:3,5

**working** 6:20

**works** 24:18
 25:20
 30:11

**Y**

**year** 25:23

**years** 10:25
 11:5 22:25
 23:6 25:11
 32:21

**Z**

**Zapruder**
 17:14